688 A.2d 1143

COMMONWEALTH of Pennsylvania, Appellant,

v.

Paul R. SCHAEFFER, Jr., Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 26, 1989.

Resubmitted Aug. 28, 1992.

Decided June 1, 1993.

Reargument Granted June 25, 1993.

See also, 539 Pa. 256, 652 A.2d 287.

54

Paul M. Yatron, First Deputy Attorney General, Robert A. Graci, Chief, Deputy Attorney General, for Appellant.

Brett O. Feese, District Attorney, Gaele McLaughlin Barthold, Chief, Deputy District Attorney, Marianne E. Cox, First Asst. District Attorney, for Amicus Curiae D.A. Philadelphia Co.

FOR APPELLEE: Peter T. Campana, Marc F. Lovecchio, Williamsport, Robert E. Colville, District Attorney, Robert L. Eberhardt, Deputy District Attorney, for Amicus Curiae Allegheny Co. District Attorney's Office.

David M. McLaughlin, Philadelphia, for Amicus Curiae Pa. Assn. of Criminal Defense Lawyers.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *ORDER*

PER CURIAM.

The Court being evenly divided, the order of the Superior Court is affirmed.

MONTEMURO, J., did not participate in the consideration or decision of this matter.

ZAPPALA, J., files an Opinion in Support of Affirmance in which FLAHERTY and CAPPY, JJ., join.

NIX, C.J., files an Opinion in Support of Reversal in which LARSEN and PAPADAKOS, JJ., join.

LARSEN, J., files an Opinion in Support of Reversal.

PAPADAKOS, J., files an Opinion in Support of Reversal.

## *OPINION IN SUPPORT OF AFFIRMANCE*

ZAPPALA, Justice.

■ The sole issue presented is whether, under the Pennsylvania Constitution, the police can send a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police.[1]

---

1. This case cannot be properly decided on non-constitutional grounds as Mr. Justice Papadakos suggests in his Opinion in Support of Reversal. The reason lies in part in the fact that the search warrant that was executed on April 6, 1984, was issued based upon information obtained from the informant's body wire that Appellee would have additional marijuana available for sale by the evening of Thursday, April 5, 1984. R.R. 42a. An additional basis is the fact that Appellee's Motion for Suppression only sought an Order suppressing any and all physical evidence seized from his residence by the police on April 6, 1984, and any evidence derived therefrom. R.R. 5a. Thus, we are squarely presented with a constitutional issue.

Mr. Justice Papadakos' reliance upon *Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23 (1992) is misplaced. *Baker* does not stand for the proposition, as Mr. Justice Papadakos believes, that the affidavit of probable cause can be parsed so as to create separate independent bases to support the issuance of a search warrant. Rather, in *Baker* we

Because the right to privacy in one's domain is sacrosanct, we hold that Article I, § 8 of the Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police. The order of the Superior Court is affirmed.

The facts of the case are not in dispute and reveal that the police employed a confidential informant to make a controlled purchase of marijuana from Appellee, Paul R. Schaeffer, Jr. in his home. Several days later, the informant was equipped with a body transmitter and directed to Appellee's home to make another marijuana purchase. During the course of this purchase, the police monitored and recorded a conversation between Appellee and the informant indicating that Appellee would have additional marijuana for sale on a certain date. Following that date, the police obtained a warrant to search Appellee's home, reciting as probable cause the controlled buys the informant had made and the contents of the conversation the police had intercepted. The police executed the warrant and seized the drugs that formed the basis for the prosecution.

Appellee was subsequently convicted in the Court of Common Pleas of Lycoming County of possession with intent to deliver marijuana and three counts of simple possession of controlled substances. In the pre-trial suppression motion and in post-trial motions, Appellee challenged the constitutionality of the electronic eavesdropping procedure used by the police. The trial court denied the motions and Appellee

held that it was necessary to obtain independent corroboration of the hearsay statements of the informant in order for the hearsay information to provide a substantial basis for concluding that probable cause existed so as to sustain the validity of a search warrant. Furthermore, given the focus of the Motion for Suppression, the questions Mr. Justice Papadakos poses relative to the admissibility of the evidence surrounding the first and second purchases are not before this Court.

As we now turn to the constitutional issue to properly decide this case, I do note that Mr. Justice Papadakos agrees with the conclusion we reach that the recorded conversation and items seized in the execution of the search warrant are suppressible. Consequently, this is not an exercise of futility as Mr. Justice Papadakos believes, but instead is intended to ensure that we will not live in an Orwellian society.

appealed, alleging that the search of his home violated both the federal and state constitutions.

The Superior Court, en banc, reversed the judgment of sentence and remanded for a new trial, 370 Pa.Super. 179, 536 A.2d 354. The court held that Article I, § 8 of our constitution, which protects the right of people to be secure from unreasonable searches and seizures, requires a warrant based on probable cause for the electronic seizure of such communications. The court reasoned that its ruling did not directly conflict with the statutory exemption stated in Section 5704(2) of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5726, and therefore concluded that there was no present need to affirmatively declare that statute unconstitutional. We granted allocatur to consider the important issue raised in Appellee's Petition for Allowance of Appeal.[2]

The Commonwealth argues that the holding of the Superior Court is contrary to this Court's holding in *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), aff'd. on other grounds, sub nom. *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), wherein we held that Section 5704 of the Wiretapping and Electronic Surveillance Control Act, did not violate Article 1, § 8 of the Pennsylvania Constitution. Appellant further argues that even if Section 5704 does require a warrant based on probable cause, the Superior Court erred in failing to apply a good faith exception to the exclusionary rule since the government was operating in reasonable reliance on the statutory and precedential authority as it existed at the time of the monitoring.

The Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5727, prescribes criminal penalties for wiretapping and other electronic interceptions of communications. See 18 Pa.C.S. § 5703. The Act also authorizes law enforcement officers to engage in wiretapping and electronic surveillance subject to a stringent procedure for showing probable cause before a Superior Court judge. See generally

2. This case was argued on October 26, 1989, before six members of this Court. On August 28, 1992, a per curiam order was entered which directed that the matter be resubmitted on briefs previously filed.

§§ 5708–5726. Exemption from these strictures are provided in the Act for other electronic surveillance techniques. The technique used in the case *sub judice* is treated in subsection 5704(2):

### § 5704. Exceptions to prohibition on interception and disclosure of communications

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. . . .

In *Commonwealth v. Blystone,* supra, we examined whether Section 5704(2) of the Act violated Article I, § 8 of the Pennsylvania Constitution. The facts of the case are that Blystone and three of his companions picked up a hitchhiker to rob him for gas money. After pulling off the road at a lonely spot, Blystone had the hitchhiker exit the automobile at gun point and led him to an adjacent field. Blystone then robbed the hitchhiker of thirteen dollars and after having him lie face down on the ground subsequently emptied his revolver into the back of the hitchhiker's head. After Blystone's associates eventually exposed him, the police were able to obtain an audio tape of Blystone describing the murder to an informant who along with Blystone was in a truck when the police monitored and recorded the conversation. *Id.* 519 Pa. at 487, 549 A.2d 81. We found no constitutional defect in the statute because Blystone had no reasonable expectation of privacy once he chose to disclose his confidence to the informant.

More recently, in *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989), we addressed the proper application of

the Act. In *Henlen,* a prison guard was being interrogated by a Pennsylvania State Trooper following the theft of an inmate's personal property. During the interrogation, the guard was secretly tape recording the interrogation. Subsequent to the interrogation, the guard filed a complaint against the trooper who had interrogated him for harassment and gave a copy of the tape to the Internal Affairs Division of the Pennsylvania State Police. The guard was then charged for violating the Act which prohibits the interception of oral communications.

We unanimously held that the Commonwealth failed to prove that the trooper possessed a justifiable expectation that his words would not be subject to interception. Under the facts of that appeal, the evidence established that the trooper took some notes of the meeting but would have taken more if he heard more information which could have been used against the defendant. Furthermore, it is common knowledge that these kinds of interrogations are routinely recorded by law enforcement officials. Therefore, the trooper would not have been justified in expecting that this conversations would not be subject to interception.

Finally, we reiterated that the Act requires that a person uttering an oral communication, as that term is defined under the Act, must have a specific expectation that the contents of a discussion will not be electronically recorded. However, this expectation must be justifiable under the existing circumstances.

Implicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy. In *Henlen,* we relied upon our decision in *Commonwealth v. Blystone,* supra, in determining what facts lead to a conclusion that no reasonable expectation of privacy exists in a particular situation. With respect to the right to privacy under Article I, Section 8 of the Pennsylvania Constitution, we stated in *Blystone:*

To determine whether one's activities fall within the right of privacy, we must examine: first, whether Appellant has

exhibited an expectation of privacy: and second, whether that expectation is one that society is prepared to recognize as reasonable. (Citations omitted).

519 Pa. at 463, 549 A.2d at 87.

The facts of *Blystone* are distinguishable from those of the case *sub judice*. Unlike both *Blystone* and *Henlen*, the instant case involves conversations taking place in the sanctity of one's home. If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home. For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home. As then Justice Roberts stated in *Commonwealth v. Shaw*, 476 Pa. 543, 550, 383 A.2d 496, 499 (1978) (Citations omitted): Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society.

In *Shaw*, the defendant was engaged in his own affairs on the second floor of his family's home. The police were admitted to his family's home to inquire of his knowledge of a recent robbery and killing. An eyewitness to the shooting had informed the police that one of the perpetrators was a friend of a man by the name of "Shaw". When the police entered the house and called out to the defendant, a detective heard feet shuffling on the second floor. Because the defendant did not respond to the detective's call, three police officers ran upstairs without a warrant or permission. We held in that instance that the governmental intrusion was unreasonable given the defendant's legitimate expectation of privacy in his own home and therefore the intrusion violated the defendant's right against unreasonable searches and seizures. While the facts of *Shaw* differ from the case sub judice, the principle involved is identical. An individual has a constitutionally protected right to be secure in his home.

Clearly then, our case law recognizes that an individual can reasonably expect that his right to privacy will not be violated in his home or other domain through the use of any

electronic surveillance. Furthermore, in this instance, there is no evidence to suggest that Appellee committed any act which would reasonably lead to the conclusion that he did not have an expectation of privacy within his domain.

Based upon this record, we must conclude that Appellee had a legitimate expectation that his conversation would not be subject to electronic surveillance. Because the right to privacy in one's domain is sacrosanct, we hold that Article I, § 8 of the Pennsylvania Constitution precludes the police from sending a confidential informer into the home of an individual to electronically record his conversations and transmit them back to the police. So that there be no confusion, it is to be noted that Section 5704(2) of the Act is devoid of any specific language which requires probable cause and we emphatically reject the analysis heretofore enunciated by the Superior Court that you may read into Section 5704(2) of the Act an implied probable cause requirement.

Finally, we need not address the Commonwealth's assertion that even if § 5704(2) is unconstitutional, its actions should be shielded by the "good faith exception" to the exclusionary rule. This is because in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), we found that under Article 1, Section 8 of the Pennsylvania Constitution, prohibiting unreasonable searches and seizures, there is no good faith exception to the exclusionary rule.

Accordingly, I would affirm the Order of the Superior Court and remand the case for a new trial.

MONTEMURO, J., did not participate in the consideration or decision of this matter.

FLAHERTY and CAPPY, JJ., join in this Opinion in Support of Affirmance.

NIX, C.J., files an Opinion in Support of Reversal in which LARSEN and PAPADAKOS, JJ., join.

LARSEN, J., files an Opinion in Support of Reversal.

PAPADAKOS, J., files an Opinion in Support of Reversal.

62

*OPINION IN SUPPORT OF REVERSAL*

NIX, Chief Justice.

It is my view that the Wiretap Act applies only to oral communications in which a party has a reasonable expectation of privacy; in the instant matter, the appellee did not have a reasonable expectation of privacy as to his conversation with a police informant.

The Wiretapping and Electronics Surveillance Control Act, 18 Pa.C.S. § 5701, *et seq.,* defines an oral communication as "any oral communication by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectations." 18 Pa. C.S.A. § 5702 (Definitions). This language mirrors the test for expectation of privacy in *Commonwealth v. Blystone,* 519 Pa. 450, 463–64, 549 A.2d 81, 87 (1988) ("first, whether appellant has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable").

In *Blystone,* a majority of this Court rejected the appellant's claim that section 5704 of the Wiretap Act (which provides exceptions to the prohibition against taping or transmitting conversations) violated the Constitution of Pennsylvania. In doing so, the majority found persuasive the United States Supreme Court case of *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). In *White,* the United States Supreme Court reasoned that "[i]f the conduct and violations made of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversation made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." *Id.* at 751, 91 S.Ct. at 1126, 28 L.Ed.2d at 458. We noted that the Supreme Court of the United States "recognized the simple fact that a thing remains secret until it is told to other ears, after which one cannot command its keeping. What was private is now on other lips

and can no longer belong to the teller." *Blystone,* 519 Pa. at 464, 549 A.2d at 87. Therefore, in the instant matter, Schaeffer, by disclosing his criminal involvement to a confidant, did not exhibit an expectation of privacy that society is prepared to recognize as reasonable.

The Opinion in Support of Affirmance fails in its attempt to distinguish the instant facts from those facts in *Blystone;* Blystone's expectation of privacy was lost not because Blystone was not in his home, but because he elected to divulge his participation in the crime to an informant. Neither the majority nor the dissenting opinion in *Blystone* contains any reference to the location of the conversation, nor do they rely on that factor to decide the case. Where the Opinion in Support of Affirmance notes that the *Blystone* decision turns on the location of the conversation, it supports that contention with a citation to the appendix to the opinion (containing a transcript of Blystone's conversation) rather than a citation to the bodies of the majority or dissenting opinion. Indeed, in this case, The Opinion In Support of Affirmance summarizes the *Blystone* holding without any reference to the location of the conversation, but instead acknowledges that there was "no constitutional defect in the statute because Blystone had no reasonable expectation of privacy *once he chose to disclose his confidence to the informant." Supra,* slip op. at 1146 (emphasis added). Thus, the location is not a distinguishing factor because it was not a consideration in the original *Blystone* decision.

Regardless of any distinguishing facts between *Blystone* and the instant matter, the instant matter fits squarely within the holding of *Commonwealth v. Rodriguez,* 519 Pa. 415, 548 A.2d 1211 (1988), which in our view controls the instant matter. In *Rodriguez,* this Court upheld as constitutional the interception of the defendant's conversation with a consenting informant in a private residence. The record in *Rodriguez* is not clear as to the defendant's ownership of the house in which

the conversation was recorded. Nonetheless, the Appellant had standing to challenge the search of a residence because he was on the premises at the time of the search. *See Commonwealth v. Peterkin*, 511 Pa. 299, 309, 513 A.2d 373, 378 (1986) (listing standards for asserting standing to object to an unconstitutional search or seizure); *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976). Thus, the situation in *Rodriguez* is indistinguishable from the facts before us today.

A majority of this Court in *Rodriguez* rejected the argument that the government's actions violated Rodriguez's constitutional right to privacy and explicitly relied upon *Blystone* and extended the *Blystone* rationale to a case involving the surreptitious recording of a conversation in a private residence. *Rodriguez*, 519 Pa. at 418, 548 A.2d at 1213. Thus, *Rodriguez* controls the instant matter, and compels us to hold that Schaeffer's constitutional right to privacy is not violated by the Wiretap Act.

Because I believe that the Wiretap Act survives constitutional scrutiny, I need not address the Commonwealth's argument that the good faith exception to the exclusionary rule should apply for evidence obtained as a result of law enforcement officials' acting pursuant to a duly enacted (but later held to be unconstitutional) statute.[1] The conduct here does not violate the defendant's constitutional or statutory rights, and the evidence was properly admitted.

Accordingly, the Order of the Superior Court should be

---

1. However, we must address the disposition of the Commonwealth's argument in the Opinion in Support of Affirmance. Mr. Justice Zappala is incorrect in perfunctorily dismissing the Commonwealth's argument based upon *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). In *Edmunds*, a majority of this Court held that our Constitution did not recognize a good faith exception to the exclusionary rule for evidence seized pursuant to a constitutionally defective search warrant. The issue before us today is whether our Constitution allows a good faith exception to the exclusionary rule when the evidence was obtained pursuant to a constitutionally defective statute. This issue requires an analysis of related case law, as well as unique issues of state and local concern that relate to the use of evidence obtained through an unconstitutional statute.

reversed, and the judgment of sentence should be reinstated.[2]

LARSEN and PAPADAKOS, JJ., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

I join the Opinion in Support of Reversal of Mr. Chief Justice Nix. The home should never be a safe haven for the sole purpose of concocting or confessing crimes. I still think, however, that Mr. Justice Zappala's dissenting opinion in *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), which dissent I joined, is the correct position in this matter.

Additionally, I write to emphasize Mr. Chief Justice Nix's comments in footnote one on page five of his Opinion in Support of Reversal. *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), wherein a majority held that the Pennsylvania Constitution did not recognize a good faith exception to the exclusionary rule for evidence obtained pursuant to a defective search warrant, is limited solely to the facts of that case. A majority of this Court may, when the issue is presented, adopt the United States Supreme Court's good faith exception to the exclusionary rule in all other factual situations.

## OPINION IN SUPPORT OF REVERSAL

PAPADAKOS, Justice.

My colleagues in support of affirmance, in their zeal to strike down what they perceive to be an unconstitutional intrusion into the sanctity of a home, have totally ignored the

**2.** Assuming for the sake of argument that there exists a heightened expectation of privacy in one's home, nevertheless we are not satisfied that this case presents an uncontroverted finding that this is a home. The record leaves unanswered the relevant question of whether this defendant was conducting a criminal business enterprise that was open to those members of the public who sought marijuana. Such an enterprise would reduce the defendant's expectation of privacy in the conversations relating to his "business." If indeed the home does present a zone of privacy warranting greater protection with relation to the Wiretap Act, a factual finding of whether this is a home remains necessary.

realities of this case and have opted to suppress evidence which was lawfully obtained.[1]

We have often stated that when a case raises constitutional and non-constitutional issues, we should not reach constitutional issues if the case can properly be decided on non-constitutional grounds. *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983); *Ballou v. State Ethics Commission,* 496 Pa. 127, 436 A.2d 186 (1981); *Richards v. Unemployment Compensation Board of Review,* 491 Pa. 162, 420 A.2d 391 (1980); *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979); *Commonwealth v. Mason,* 483 Pa. 409, 397 A.2d 408 (1979); *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977).

Appellee, Paul R. Schaeffer, sought to suppress the fruits of a search conducted pursuant to a search warrant issued upon an affidavit containing two independent sources of information forming the basis of probable cause. The Superior Court and those justices in support of affirmance have zeroed in on one source of information and declared same to be tainted in that, in their view, the information is based upon an illegally recorded conversation between appellee and an informant.

The affidavit of probable cause reads as follows:

1. I must respond to the misreading of the record by Mr. Justice Zappala as expressed in footnote 1 of his Opinion In Support of Affirmance.

   The wearing of the wire by the informant neither facilitated nor abetted the purchase of marijuana by the informant between the dates of April 1, and April 6, 1984. The evidence adduced by the wire was that Schaeffer was expecting a delivery of marijuana. Under *Baker,* the controlled purchase of marijuana was sufficient to support the issuance of the search warrant. The rest of the information in the affidavit of probable cause was surplusage and in no way could invalidate the purchase under the rule established by *Baker.* Again I ask Mr. Justice Zappala—what evidence is to be suppressed under his theory? The evidence surrounding the first purchase? The evidence surrounding the second purchase? The recorded conversation transmitted to the police from the informant's body wire? The testimony of the informant as to what he saw and heard while he was wearing the body wire? If Mr. Justice Zappala's reasoning holds water, I can agree that the recorded conversation and the items seized in execution of the search warrant are suppressible. None of the other evidence produced by the informant as a result of the March and April purchases is suppressible. At best, harmless error has occurred here by the use of the search warrant and we are engaged in an exercise of futility.

Between the dates of 18 Mar 84 and 25 Mar 84 a confidential source made a purchase of Marijuana from the above stated Paul Schaeffer Jr. at the above stated location. Prior to making said controlled purchase, the source and his vehicle were searched by the affiant and Cpl. D.J. Houser. The source was observed entering the Schaeffer home, upon leaving the home the source turned the Marijuana over to the affiant. Marijuana field tested with positive results. Between the dates of 1 Apr 84 and 6 Apr 84 the same confidential source made a purchase of Marijuana from the above stated Paul Schaeffer Jr. at the above location. Prior to making said controlled purchase, the source and his vehicle were searched by the affiant and Cpl. D.J. Houser. The source was observed entering the Schaeffer home, upon leaving the home the source turned the marijuana over to the affiant. Marijuana field with positive results.

The above represents one source of information which clearly establishes probable cause to support the issuance of a search warrant. The allegations are on all four with our prior cases which set forth the requirements for establishing probable cause when using a confidential informant. *Commonwealth v. Baker*, 532 Pa. 121, 615 A.2d 23 (1992).

The second source of information appearing in the affidavit of probable cause reads as follows:

During the purchase of marijuana by the confidential source between April 1 and April 6, 1984, the confidential source was equipped with a body transmitter. Your affiant heard the entire conversation between the confidential source and Paul Schaeffer, Jr. during the course of the purchase. The confidential source knew, upon being equipped with the body transmitter that the entire conversation would be heard by your affiant. In the course of the conversation during the purchase of marijuana between April 1 and April 6, 1984, Paul Schaeffer, Jr. made a statement to the confidential source to the effect that Paul Schaeffer, Jr. would have additional marijuana available for sale by the evening of Thursday, April 5, 1984.

68

The Superior Court majority and those of my colleagues in support of affirmance totally ignore the validity of the first source of information as establishing probable cause and rely only on the second source, the recorded conversation, to declare the entire affidavit of probable cause invalid and, thus, to suppress *all* the evidence obtained by the police. More amazing, is the fact that the recorded conversations were not even used at trial!

In summary, the affidavit of probable cause states:

Both with regard to the purchase between March 18 and March 2, 1984, and the purchase between April 1 and April 6, 1984, the marijuana purchased from Paul Schaeffer, Jr. by the confidential source was delivered to the source by Paul Schaeffer, Jr. in small pre-packaged baggies.

Do my three colleagues now proclaim a newly devised principle to thwart law enforcement officials in their fight against drugs that when an affidavit of probable cause contains one source of information which is tainted that the search warrant is defective no matter how many other independent sources of information are included in the affidavit and are found to be valid?

We need go no further than to our *Baker* case for a a controlling decision on the facts of this case. In *Baker*, we stated, "All that we observe is that the Agent corroborated the informant's admissions with first-hand knowledge, that he gave the informant money to buy narcotics in a controlled situation, and that the informant returned with cocaine." This information provides a substantial basis for concluding that a search would probably uncover evidence of wrongdoing and the evidence is credible and reliable.

Since I find that the search warrant was issued upon an affidavit of probable cause, there is no room for a discussion of a "good faith exception" to the exclusionary rule and stricture of *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), which is not implicated.

Finally, I must take issue again with my colleagues who mischaracterize the premises involved here as the "home" of

the Appellee. I fully agree that the "home" must remain inviolate from unlawful government intrusion. But this is no "home" into which government intruded with the body wire. The Appellee may live there; he may sleep there; he may eat there. *He also carries on a commercial venture there. He is running a "drug" store there.* In my view, Appellee is no different than the doctor or the lawyer or the accountant or the hairdresser or the tailor, etc., etc., etc., who operate their professions or businesses out of their "homes" (with lawfully obtained occupancy permits which, I surmise, Appellee does not have).

Those in support of affirmance state that: "Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society." (Slip opinion, p. 1146). I agree. But this Appellee did not close his door to the outside world. Rather, he opened it to customers who came into his "drug" store for the express purpose of purchasing drugs in violation of our drug laws.

This was no home selected at random by the police for the purpose of conducting a fishing expedition (as the police are now permitted to do with roadblocks). This was the premises of a known dealer in drugs who was known to use the premises for selling drugs to the outside world, that is, non-occupants of the premises.

I note from the record that the police complied fully with the statutory requirements and the steps set out in our case of *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988),[2] in obtaining appropriate authorization from the district attorney for fitting the informant with a wire.

**2.** Prior to making this second purchase, the informant consented to wear a transmitting device to enable the police to hear and record his conversations with Schaeffer. Before using this electronic surveillance investigative technique, the officer conducting this investigation sought and obtained the approval of the Lycoming County District Attorney. This authorization was given by the District Attorney's first assistant who had been designated in writing for that purpose. The first assistant authorized the interception of Schaeffer after speaking with the informant and after the informant consented to have his conversations intercepted. The informant executed a "memorandum of consent" in the presence of the officer.

In *Commonwealth v. Henley*, 504 Pa. 408, 474 A.2d 1115 (1984), this Court unanimously accepted, *sub silentio*, the propriety of an informant, wired with a tape recording device by the police, entering a jewelry store and engaging the proprietor in the sale of allegedly stolen gold chains. The admissibility of the recording was never questioned by the parties or the courts. Would we have suppressed the recording if it were shown that the proprietor lived in a back room of the jewelry store, as so many small shop owners often do?

And what about those unfortunate persons who are forced, or choose, to make their homes on public streets, in railroad depots, in public buildings, in subway tunnels, etc. Are they, too, protected if they sell drugs at the site of their sleeping quarters? Do they have this constitutionally protected expectation of privacy?

I dissent because of the distinction I raise as to the definition of "home" for the purpose of invoking the guarantees of our Constitution with respect to the expectation and the right of privacy. In my Concurring Opinion in Support of Affirmance in *Commonwealth v. Lopez*, 525 Pa. 185, 579 A.2d 854 (1990), I wrote:

> "We decry, and demand to protect against the stormtroopers' tactics while, at the same time, we accept the draping of the Constitution around these criminal employments much as the Axis Powers in World War II were wont to drape their munitions' factories and arms stockpiles with Red Cross, or other hospital, insignia in order to fool the tenderhearted Allies, who would never dream of bombing a hospital."

In this day and age when the use of informants is an effective tool in the apprehension of criminals, it would seem foolhardy for anyone engaged in the illicit trafficking of drugs with others to stake their lives on the belief that an expectation of privacy protects them from electronic detection, especially when they must know that the informant's testimony can be admissible against them.

It also seems to me that when "a felon is engaged in his employment" and is dealing one on one with his seller or

buyer, he is not relying upon any expectation of privacy to protect his criminal activities, but, rather, he is reposing trust in his confidant.

A reasonable expectation of privacy under a given set of circumstances depends on one's actual subjective expectation of privacy as well as whether society is prepared to recognize this expectation as reasonable. *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In this respect, I agree with and join the Opinion in Support of Reversal authored by Mr. Chief Justice Nix.

For the foregoing reasons, I write in support of reversal and would reverse the Superior Court and affirm the conviction entered by the trial court.

### *ORDER*

PER CURIAM.

AND NOW, this 25th day of June, 1993, it is hereby ordered that the Application for Reargument is granted and the case is to be reargued at the January, 1994, Session of Court in Philadelphia. It is further ordered that the appeal be consolidated with *Commonwealth v. Brion*, No. 16 M.D. Allocatur Docket 1989, and *Commonwealth v. Schaeffer*, No. 352 M.D. Allocatur Docket 1992.