688 A.2d 698

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jerry Leon SELBY, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 13, 1996.

Decided Jan. 14, 1997.

Robert David Bacher, Lancaster, for Jerry L. Selby.

Joseph Madenspacher, J. Karl, Lancaster, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

FLAHERTY, Chief Justice.

As in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), the sole issue in this case is whether an informer wearing a consensual wiretap may, without judicial approval, enter another individual's home to record his conversations electronically for use by the police in an undercover investigation. We held in *Brion* that under Article I, Section 8 of the Pennsylvania Constitution, an individual's right to privacy in his home should remain inviolate. The judgment of the Superior Court is reversed in part and affirmed in part.

The facts in *Brion* are virtually identical to those in the present case. In *Brion,* the police sent a confidential informer, wearing a wiretap, to Michael Brion's home to purchase illegal drugs. The police failed to obtain judicial approval for the informer's body wire. The informer entered Brion's home and made the purchase, all the while transmitting the conversation to monitoring agents who recorded it and introduced it in Brion's trial after the trial court denied a pretrial suppression motion.

Brion was found guilty on all charges. Post-verdict motions were filed alleging that the trial court erred when it failed to suppress the taped conversation, and the trial court granted Brion's motion for a new trial. Superior Court reversed and we granted allocatur. On appeal, we held that "[b]ecause there was no determination of probable cause by a neutral judicial authority, the ... body wire violated Article I, Section 8 and the tape recording ... should have been suppressed." *Brion* at 262, 652 A.2d at 289. Accordingly, we reversed.

Appellant in the present case, Jerry Leon Selby, was charged with twenty-two criminal counts resulting from an investigation of drug trafficking in Lancaster, Pennsylvania. In the course of the investigation, the police sent an informer, wearing a consensual wiretap, into the appellant's residence. The police failed to obtain judicial approval for the informer's body wire.

At trial, the Commonwealth and defense counsel stipulated that the Commonwealth would proceed with only counts three and four. In count three, the Commonwealth alleged that appellant delivered a packet of heroin to a police informant at the informant's home. In count four, the Commonwealth alleged that appellant delivered ten packets of heroin to the same individual (wearing a body wire), at appellant's home.

Appellant filed an omnibus pretrial motion to suppress the tape recording of the transaction in count four on the basis that the recording was obtained in violation of both the United States and Pennsylvania Constitutions. The trial court denied the motion and after a jury trial appellant was convicted of both counts. The trial court denied appellant's post-verdict motions and sentenced him to five to ten years imprisonment on count three and six to twelve years imprisonment on count four. The Superior Court affirmed and appellant filed a timely petition for allowance of appeal to this court. We granted allocatur, but held disposition of the case pending the outcome of *Brion.*

The Commonwealth mischaracterizes the issue as one not of constitutional rights but as one of retroactivity in the application of *Brion* and then engages in a laborious analysis of retroactivity. Since we held this case pending the outcome of *Brion,* it is clear that we expected this case to be controlled by the outcome of *Brion.* If this were not so, then retroactivity would be an issue.

Even if retroactivity were the issue, the general rule is that a "new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal." *Commonwealth v. Cabeza,* 503 Pa. 228, 233, 469 A.2d 146, 148 (1983).

Considered in the light of the *Cabeza* rule, the illogic of holding this case pending *Brion* and then reaching the opposite result in an analytically indistinguishable situation defies explanation. For these reasons, the order of the Superior Court with respect to count four is reversed and remanded for

proceedings consistent with this opinion. The order of the Superior Court with respect to count three is affirmed.

NIGRO, J., concurs in the result.

CASTILLE, J., files a dissenting opinion.

NEWMAN, J., files a dissenting opinion in which CASTILLE, J., joins.

CASTILLE, Justice, *dissenting.*

I join in Justice Newman's dissenting opinion and write separately to reiterate my belief that *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), was wrongly decided. As Former Chief Justice Nix stated in his dissenting opinion in *Brion,* by discussing his criminal involvement with another person, appellant abandoned any reasonable expectation of privacy in those communications. *Id.* at 263, 652 A.2d at 290. It is irrelevant whether those communications were made in a private home, an office or a public park. Therefore, I would hold that the Wiretap Act, 18 Pa.C.S. § 5701, *et seq.,* does not violate Article I, Section 8 of the Pennsylvania Constitution by allowing communications in a person's home to be intercepted electronically without prior judicial authorization.

NEWMAN, Justice, *dissenting.*

I respectfully dissent. Before we determine whether the rule announced in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994), should apply retroactively or prospectively, we must first determine whether our holding in *Brion* even applies to the particular facts of the present case. I have serious concerns that this Court is promulgating a line of unduly confusing and impractical cases that misapply the exclusionary rule to allow accused drug dealers to escape criminal liability.

In *Brion,* the police sent an informant to purchase marijuana, while wearing a device that electronically recorded his conversations with the dealer, and transmitted them back to the police. The police in *Brion* followed all of the requirements set forth in Section 5704(2) of the Wiretap Act, by

obtaining a designated assistant district attorney's approval before using the recording and transmitting device. Nevertheless, this Court suppressed the wiretap evidence based on a conclusion that the tape recording occurred inside the defendant's "home" and therefore violated Article I, Section 8 of the Pennsylvania Constitution.[1] This Court deemed subsection 5704(2) of the statute unconstitutional only as it applied to the particular facts in *Brion*, where the recording occurred in the defendant's home, stating:

> [W]e hold that an individual can reasonably expect that his right to privacy will not be violated in his home through the

1. This Court's decision in *Brion* is clearly based on Article I, Section 8 of the Pennsylvania Constitution and not the Fourth Amendment to the United States Constitution. The United States Supreme Court has held that the United States Constitution does not require prior judicial approval of a one-party consensual wiretap in a defendant's home. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

In *White*, an informant wearing a recording device recorded and transmitted to federal agents his conversations with the defendant occurring in various locations, including the defendant's home. The United States Supreme Court ruled that the tape recorded evidence was admissible, and stated the following:

> [A] police agent who conceals his police connections may write down for official use his conversation with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights.
>
> For Constitutional purposes, no different result is required of the agent instead of immediately reporting and transcribing his conversation with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to the other agents monitoring the transmitting frequency.
>
> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

401 U.S. at 751, 91 S.Ct. at 1125–26. As Justice Castille noted in his dissenting opinion in *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279 (1996), this Court has repeatedly used Article I, Section 8 of the Pennsylvania Constitution to extend to criminal defendants greater privacy rights than the United States Supreme Court has recognized

use of any electronic surveillance. **In so holding, we need not find Section 5704(2) unconstitutional.** We must presume that the General Assembly did not intend to violate the constitution. 1 Pa.C.S. § 1922(3), and will construe a statute so as to sustain its validity if such is fairly possible.

\* \* \*

With respect to oral communications within one's home, interception pursuant to 18 Pa.C.S. § 5704(2)(ii) can only be deemed constitutional under Article I, Section 8 if there has been a prior determination of probable cause by a neutral, judicial authority.

\* \* \*

**In this case, there is no evidence to suggest that Brion committed any act which would reasonably lead to the conclusion that he did not have an expectation of privacy within his home.**

*Brion* at 260—61, 652 A.2d at 289 (citations omitted) (emphasis added). Importantly, the above language clearly indicates that Section 5704(2) of the Wiretap Act is constitutional on its face. The majority in *Brion* was apparently persuaded by the absence of evidence in the record to suggest that the appellant committed any acts that decreased his expectation of privacy in his home.[2]

Conspicuously absent from this Court's majority opinion in *Brion* is a discussion of what facts in the record led to the conclusion that the house where the wiretap occurred was, in fact, Brion's home. A home is a private dwelling where individuals live, accumulate their belongings, and perhaps gather with family and friends. Our homes are personal,

---

pursuant to the Fourth Amendment to the United States Constitution. This Court continued that unfortunate trend when it decided *Brion*.

**2.** Although I recognize that the majority in *Brion* made this statement, I cannot agree that a drug dealer who sells contraband from his or her home does not decrease his or her expectation of privacy in the home. Nevertheless, the majority in *Brion* so held, and the doctrine of *stare decisis* does not permit us to revisit that issue now.

private places and the right to be secure in one's home is sacrosanct. However, when an individual opens his or her house to the public to operate an illicit business retailing drugs to the neighborhood heroin addicts, that house ceases to be a "home" as that word is commonly used. An individual who uses their living room to sell illicit drugs to members of the public has no greater an expectation of privacy than the owner of a legitimate pharmacy has on the sales floor of their store.

In a dissenting opinion in *Brion*, Chief Justice Nix stated the following:

> Assuming for the sake of argument that there exists a heightened expectation of privacy in one's home, nevertheless it is debatable as to whether this case presents an uncontroverted finding that this is a home. The record leaves unanswered the relevant question of whether this defendant was conducting a criminal business enterprise that was open to members of the public who sought marijuana. Such an enterprise would reduce the defendant's expectation of privacy in the conversations relating to his "business". If indeed the home does present a zone of privacy warranting greater protection with relation to the Wiretap Act, a factual finding of whether this is a home remains necessary.

*Brion* at 265, n. 2, 652 A.2d at 287, n. 2. Before punishing the Commonwealth with the sanction of suppressing evidence pursuant to *Brion*, the record must establish that the property in question is, in fact, a home.[3]

---

**3.** Also noteworthy is this Court's decision in *Commonwealth v. Schaeffer*, 547 Pa. 53, 688 A.2d 1143, *reargument granted*, (1993), *affirmed by an equally divided court*, 539 Pa. 272, 652 A.2d 294 (1994), in which this Court, being equally divided, affirmed a decision of the Superior Court which held that the police must obtain a "search warrant" before they can send an informant into a suspect's home to electronically record his conversations and transmit them back to the police.

This Court granted reargument and affirmed its earlier decision in *Schaeffer*, but then effectively overruled *Schaeffer sub silentio* in *Brion*. Justice Papadakos' dissent in this Court's first decision in *Schaeffer* is compelling, in which he stated the following:

We have repeatedly seen cases in which drug dealers carry on their illegal transactions from inside their homes. Many drug dealers obviously prefer to sell drugs inside their "homes" to avoid detection by law enforcement officers. When this occurs, however, the character of the premises changes from a home to a business, although an illegal business. I cannot fathom why this Court is so eager to shield these illegal businesses with the extraordinary protections that have been traditionally extended only to homes.

A mere claim that the location of a drug business is in an individual's "home," without more, is insufficient to entitle that property to the heightened protections provided to homes pursuant to Article I, Section 8 of the Pennsylvania Constitution. Before this Court imposes upon the Commonwealth the drastic sanction of suppression of evidence pursuant to *Brion*, there must be evidence in the record that conclusively establishes that the premises in question are a true home, and not a "business."

In the matter sub judice, the majority does not explain what factors—other than a statement that the wiretap occurred in Selby's "home"—triggered the heightened protections provided to homes pursuant to Article I, Section 8 of the Pennsylvania Constitution. Instead, the majority opinion glosses over these vital facts and forges ahead into a discussion of retroactivity.[4] Because the majority has omitted this vital informa-

I must take issue again with my colleagues who mischaracterize the premises involved here as the "home" of the Appellee. I fully agree that the "home" must remain inviolate from unlawful government intrusion. But this is no "home" into which government intruded with the body wire. The Appellee may live there; he may eat there. He also carries on a commercial venture there. He is running a "drug" store there. In my view, Appellee is no different than the doctor or the lawyer or the accountant or the hairdresser or the tailor, etc., etc., etc., who operate their professions or businesses out of their "homes" (with lawfully obtained occupancy permits which, I surmise, Appellee does not have).
1993 Pa. Lexis 1993, pp. 25—26.

**4.** This approach raises more questions than it answers. For example, the answers to at least some of the following questions would be helpful:

tion, and because it appears from the limited facts that Selby opened his home to business invitees to further his retail heroin trade, I would not apply the holding of *Brion* to this case.

Moreover, this Court is creating unfair confusion for law enforcement officials who try in good faith to comply with the Wiretap Act. This confusion arises because the majority opinions in the present case and in *Brion* did not explain what constituted a "home" and because the "homes" in these cases evidently do not fit the traditional definition of that word. Law enforcement officers will now be forced to obtain prior approval from Superior Court judges nearly every time they seek to use wiretaps because of uncertainty regarding whether a court will later deem an unlikely location to be a "home."

Selby surrendered his expectation of privacy, if one existed, because he consciously chose to engage in and discuss his heroin "business" with an individual who later turned out to be an informant. I therefore cannot agree with majority that *Brion* is factually indistinguishable from the present case. Nor can I agree that we should extend our holding in *Brion* to every case in which a defendant claims that a consensual tape recording occurred in his or her "home." To so hold would extend the extraordinary protections we afford homes pursuant to Article I, Section 8 of the Pennsylvania Constitution too far.

I would therefore affirm the Order of the Superior Court affirming the judgment of sentence.

1. Who owns this property? If it is owned by someone other than Selby, was Selby permitted to live there?
2. If the house is rented, is Selby's name on the lease? Who pays the utilities for this property?
3. Does Selby receive mail there? Does Selby use that address for purposes of driver's licensing or voter's registration?
4. Is there any other property that could be considered Selby's residence?