Bula E. Shoenfelt, Petitioner v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued December 7, 1979, before Judges CRUM-LISH, JR., MENCER and MACPHAIL, sitting as a panel of three.

*Kandace F. Foust,* for petitioner.

*Edward P. Carey,* Assistant Attorney General, with him, *Linda M. Gunn,* Assistant Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., March 5, 1980:

The Department of Public Welfare (DPW) hearing officer affirmed a decision of the Blair County Board of Assistance (CBA) which denied benefits of $250.00 to Bula E. Shoenfelt under Pennsylvania's Emergency Energy Assistance Program. We reverse.

Shoenfelt is a 79-year old woman whose sole monthly income consists of a $228.40 Social Security check supplemented by food stamps. Acting upon a notice from DPW stating she may be eligible for funds to assist in the payment of energy-related expenses, Shoenfelt borrowed $300.00 from her niece to utilize as partial payment for repairs to her badly leaking roof.

The issue before us concerns DPW's interpretation of its regulations published in 8 Pa. B. 1110, 1111, 1469-70 (1978). These regulations provide grants of assistance for energy-related expenses due to cold weather, including "emergency house repairs" up to a maximum of $250.00. In cases where a service supplier is involved, the applicant must furnish documentary evidence that these bills have not been paid. The department is then authorized to directly reimburse the utility, fuel or service supplier. It is conceded by the department that Shoenfelt is in all ways eligible for assistance except that she has no outstanding energy-related bills since the roofer, her supplier, has been paid. Reimbursements, however, may be made directly to a *lending institution* which supplied funds

to an applicant.[1] DPW, in strictly interpreting this regulation, has ruled Shoenfelt ineligible for the grant because she borrowed the money from a relative.

Was this decision an abuse of discretion for DPW to so narrowly interpret its regulations?

What was the intent of the department regulations? We look for guidance to the enabling federal legislation which funds the state energy assistance program. The federal program, known as "Emergency Energy Conservation Services" was implemented in order to "enable low income individuals and families, including the elderly and the near poor, to participate in energy conservation programs designed to lessen the impact of the high cost of energy on such individuals and families and to reduce individual and family energy consumption."[2] Funds made available to states are to be used only to respond to the needs of eligible households which arise out of the existence of an energy-related emergency.

In our judgment, Shoenfelt fits precisely the type of individual intended to be benefited by the underlying legislation. To exclude reimbursement of the energy-related loan merely because a private lender is involved is an unreasonable construction which leads to an unjust result. In so holding, we are guided by the presumption that the legislature does not intend an unreasonable result. *Baronett v. Tucker,* 26 Pa. Commonwealth Ct. 559, 365 A.2d 179 (1976). Penalizing Shoenfelt for bargaining to obtain a lower than market interest rate[3] is not grounded upon sound logic considering the limited financial wherewithall of this applicant.

---

[1] 8 Pa. B. 1470 (1978).

[2] 42 U.S.C. §2809(a)(12).

[3] The applicant's niece, payee of the note, testified that she is charging six percent (6%) interest on the loan and intends to enter judgment if it is not satisfied. A promissory note for the personal loan is documented as an exhibit in the record.

Permitting assistance reimbursement benefits to deserving individuals such as Shoenfelt would not, in our opinion, countenance or encourage the fraudulent abuse of the energy assistance program.

Accordingly, we

### ORDER

AND Now, this 5th day of March, 1980, the adjudication of the Commonwealth of Pennsylvania, Department of Public Welfare, dated July 21, 1978, as finally adopted July 31, 1978, is reversed and the case remanded for determination of benefits.

This decision was reached prior to the death of President Judge BOWMAN.

Judge DISALLE did not participate in the decision in this case.

---

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent.

The Department's regulations are clear. Section V, 8 Pa. B. 1111 provides:

All payments under this program will be made *directly to the utility, fuel, or service supplier.* The amount of payments will be based on the actual amount of the overdue bill or $250, whichever is less.

Payments to multiple vendors can be made up to the maximum amount of $250 per eligible household. (Emphasis added.)

Subsection C of Section IV (Annex A), 8 Pa. B. 1470 provides:

For persons who can provide documentary evidence that they borrowed money from a *lending institution* to pay their heating or other energy related expenses, payments can be made to the lender. To be eligible for this type of payment, the applicant must present a signed statement from the lending institution that a

loan was made to the applicant to pay the applicant's heating or other energy related expenses. In addition to the statement from the lending institution, the applicant must be able to show that the loan was used to pay for their heating or other energy related expenses.

The statement from the lending institution and other documentation is to accompany the application and is to be processed in the 'Special Handling' batches. (Emphasis added.)

While it may be true that in the instant case the literal enforcement of the regulation works an injustice, the obvious purpose of such regulations is to reduce welfare fraud by restricting the reimbursement for loans to lending institutions and by requiring the signed statement from the lending institution that the loan was made to enable the applicant to pay heating or other energy related expenses. The Department has sought to reduce or eliminate questionable expenditures. I believe the regulations are reasonable and enforceable. Since the niece in the instant case is not a ''lending institution,'' I believe the regulations preclude the benefits the majority would award to the Appellant.

I would affirm the Department.