703 A.2d 1027

COMMONWEALTH of Pennsylvania, Appellee,

v.

James M. FOWLER, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 8, 1997.

Decided Nov. 20, 1997.

Samuel C. Stretton, for James Fowler.

Kenneth A. Osokow, Philadelphia, Thomas A. Marino, Williamsport, for the Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NEWMAN, Justice.

James Michael Fowler (Fowler) appeals an Order of the Superior Court affirming the Order of the Court of Common Pleas of Lycoming County, which denied the petition for relief pursuant to the Post Conviction Relief Act 42 Pa.C.S. §§ 9541 *et seq.* We affirm the Order of the Superior Court.

### *FACTS AND PROCEDURAL HISTORY*

In July 1990, Pennsylvania State Trooper Al Diaz was working with William Fern as a confidential informant. Fern had been purchasing controlled substances from Michael Parker, who was obtaining drugs from a third party. On July 11, 1990, Trooper Diaz followed Fern to Parker's residence, but Parker did not have any cocaine. Parker told Fern that he could get him marijuana elsewhere, and they drove to Fowler's house.[1] Fern stayed in the car while Parker went in and purchased marijuana from Fowler. Parker was not cooperating with the Commonwealth on July 11, 1990, but shortly after that the police arrested him and he agreed to cooperate with the Commonwealth as a confidential informant.

On October 31, 1990, Trooper Ronald Clark placed a tape-recording device under Parker's clothes and gave him prerecorded money to make a purchase of marijuana from Fowler.

---

1. In this appeal, both parties agree that the recording occurred in Fowler's home. For the reasons set forth in *Commonwealth v. Selby,* 547 Pa. 31, 688 A.2d 698 (1997) (Newman, J., dissenting), the author of this Opinion does not necessarily agree that the record establishes that this property was in fact Fowler's home. However, this issue is not dispositive in this case because at the time of Fowler's trial, it was irrelevant whether the recording occurred inside the defendant's home or elsewhere.

Parker then went to Fowler's house and purchased marijuana from him while tape-recording the transaction. The police subsequently arrested Fowler and charged him with controlled substance offenses stemming from the July 11 and October 30, 1990 transactions.

During a jury trial on August 21—23, 1991, the Commonwealth presented the testimony of Fern, Parker, Trooper Diaz and Trooper Clark. The Commonwealth also played the tape recording for the jury. The defense strategy was to portray Fowler as a marijuana user, rather than a dealer, and he denied ever selling marijuana to Parker. Although Fowler admitted that he discussed marijuana with Parker, he used portions of the tape-recorded conversation to corroborate his claim that he discussed giving Parker tobacco cigarettes, rather than marijuana. The jury found Fowler guilty of the following charges stemming from the October 31, 1990 transactions: possession with intent to deliver marijuana,[2] delivery of marijuana,[3] and possession of marijuana.[4] The jury found Fowler not guilty of all charges related to the July 11, 1990 sale of marijuana. The trial court denied post-verdict motions and sentenced Fowler to eight to twenty-three months incarceration. The Superior Court affirmed the judgment of sentence on December 17, 1992. *Commonwealth v. Fowler*, 428 Pa.Super. 614, 626 A.2d 644 (1992).

Fowler then retained new counsel, who filed a PCRA Petition in the Court of Common Pleas of Lycoming County on January 7, 1994. After oral argument, the PCRA court denied the PCRA petition without an evidentiary hearing. This Court granted Fowler's Petition for Allowance of Appeal limited to the issue of whether trial counsel was ineffective because he did not move to suppress evidence of the tape-recorded conversation based on the Superior Court's decision in *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987), in which the Superior Court held that the police

2. Section 13(a)(13) of the Act of April 14, 1972, P.L. 233 No. 64, *as amended*, 35 P.S. § 780–113(a)(13).

3. 35 P.S. § 780–113(a)(30).

4. 35 P.S. § 780–113(a)(30).

must obtain a "warrant" before they intercept a conversation in a defendant's home.

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

The Legislature has set forth specific requirements a petitioner must meet to be eligible for relief pursuant to the PCRA. 42 Pa.C.S. § 9543. When a PCRA petitioner claims that a prior attorney was ineffective, he or she must prove that the conviction resulted from "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The law is well settled in Pennsylvania that trial counsel is presumed to have been effective. *Commonwealth v. Roberts*, 545 Pa. 460, 681 A.2d 1274 (1996); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). To defeat this presumption and warrant relief, a defendant must prove that the underlying claim is of arguable merit, counsel had no reasonable basis for the act or omission in question, and but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997). Counsel can never be deemed ineffective for failing to raise a claim that has no merit. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

It is well settled that the adequacy of trial counsel's representation will be assessed based on the law as it existed at the time of the representation. *Commonwealth v. Pizzo*, 529 Pa. 155, 602 A.2d 823 (1992); *Commonwealth v. Johnson*, 516 Pa. 407, 532 A.2d 796 (1987); *Commonwealth v. Brewer*, 479 Pa. 558, 388 A.2d 1071 (1978). Counsel cannot be found ineffective for failing to foresee or predict changes in the law. *Commonwealth v. Triplett*, 476 Pa. 83, 381 A.2d 877 (1977).

In *Triplett*, the defendant was arrested for murder and related charges, and he made an incriminating statement when the police questioned him. The defendant was sixteen

years old at the time of his arrest, and both his parents and his attorney were not present when he waived his *Miranda*[5] rights. Defense counsel filed a motion to suppress the statement, which the trial court denied. After the commencement of trial, the parties reached a plea agreement and the court accepted the defendant's guilty plea after a thorough colloquy. The defendant did not file a direct appeal.

More than one year later, the defendant filed a petition for relief pursuant to the Post Conviction Hearing Act (PCHA).[6] Court-appointed counsel filed an amended PCHA petition in which he alleged that prior counsel was ineffective because he did not advise the defendant that his guilty plea would preclude him from challenging the admissibility of his confession on appeal. The PCHA court denied relief, and on appeal to this Court the defendant argued that his statement should have been suppressed based on changes in the law that occurred after he pled guilty. Specifically, he relied on *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), in which this Court adopted a per se rule that juveniles could not waive their *Miranda* rights without being afforded an opportunity to confer with a concerned adult.

This Court rejected the defendant's argument that his attorney was ineffective and held that counsel's action was reasonable at the time he pled guilty. This Court stated the following in *Triplett:*

> The test for competency [of counsel] is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record, but whether counsel's assessment of appellant's case and his advice were reasonable. At the time appellant's motion to suppress was decided and at the time his plea of guilty was entered, appellant's youth was but one factor to be considered in determining whether the

5. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6. The PCHA was amended in part and repealed in part and replaced with the PCRA.

waiver of *Miranda* rights was knowing and his statement voluntary.

\* \* \*

We cannot impose upon trial counsel the qualities of a seer and fault him for not foreseeing that this Court would finally adopt per se rules as to juvenile waivers of *Miranda* rights. For this reason, we examine counsel's stewardship under the standards as they existed at the time of his action; and counsel will not be deemed ineffective for failing to predict future developments in the law.

*Id.* at 89, 381 A.2d at 880—881 (citations omitted). We must therefore confine our inquiry to a determination of whether the particular course chosen by counsel had some reasonable basis designed to effectuate Fowler's interests under the law as it existed at the time of his trial on August 21—23, 1991. *Triplett* at 88, 381 A.2d at 880, *citing Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

## II. *Admissibility of Tape–Recorded Evidence*

■ To assess trial counsel's actions relative to the suppression of tape-recorded evidence, we must begin with the language of the relevant statute, Section 5704 of the Wiretap Act, 18 Pa.C.S. § 5704, which provides as follows:

§ 5704. Exceptions to prohibition on interception and disclosure of communications

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. . . .

18 Pa.C.S. § 5704. Section 5704 does not distinguish between conversations recorded in a defendant's home, or elsewhere. Thus, the language of Section 5704 of the Wiretap Act does not require the police to obtain prior judicial approval to intercept and record a conversation in a defendant's home if one of the parties to that conversation gives his or her consent. This is consistent with well-settled law from the United States Supreme Court, which held that the United States Constitution does not require prior judicial approval of a one-party consensual wiretap in a defendant's home. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

Nevertheless, on December 29, 1987, the Superior Court decided *Commonwealth v. Schaeffer*, 370 Pa.Super. 179, 536 A.2d 354 (1987)(*en banc* ), in which it created a new requirement that the police must obtain a "warrant" to send a confidential informant into a suspect's home to record his or her conversations. In *Schaeffer*, the Superior Court held that the Pennsylvania Constitution requires a "warrant" before the police monitor conversation in the home, and ordered the suppression of evidence because the police did not obtain prior judicial approval before obtaining tape-recorded evidence in the defendant's home.[7]

The Commonwealth filed a Petition for Allowance of Appeal in *Schaeffer*, which this Court granted on December 2, 1988. *Commonwealth v. Schaeffer*, 520 Pa. 596, 552 A.2d 251 (1988).

---

**7.** Section 5721(a) of the Wiretap Act provides that an aggrieved party may move to suppress the contents of any unlawfully intercepted wire, electronic, or oral communications. This Court has previously described Section 5721(a) of the Wiretap Act as a "statutorily created exclusionary rule." *Commonwealth v. Louden*, 536 Pa. 180, 190, 638 A.2d 953, 958 (1994). In *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979), this Court described the drastic consequences stemming from suppression of evidence when it stated the following:

"[E]ach time the exclusionary rule is applied it exacts a substantial social cost for the vindication of [constitutional] rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected."

*Id.* at 555, 406 A.2d at 1029, quoting, *Rakas v. Illinois*, 439 U.S. 128, 137, 99 S.Ct. 421, 427, 58 L.Ed.2d 387 (1978).

After that, the Commonwealth's appeal in *Schaeffer* went undecided for many years. During that time, this Court and the Superior Court issued other relevant decisions in this area that overruled the Superior Court's decision in *Schaeffer sub silentio*. Fowler argues that the *Schaeffer* case, which was decided before his trial, was controlling precedent and that the application of the Superior Court's *Schaeffer* holding to the facts of his case should have resulted in suppression of the tape-recorded evidence at his trial. We disagree.

While the Commonwealth's appeal to this Court in *Schaeffer* was pending, this Court decided *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), which held that there was no constitutional violation when a suspect's conversations with an informant were intercepted with the consent of the informant. Mr. Justice McDermott, who authored the majority Opinion in *Blystone*, cited the decisions of the United States Supreme Court in *White* and *On Lee*, and concluded that a defendant does not have a reasonable and legitimate expectation of privacy when he speaks to another person who might later reveal that conversation to the police. Our decision in *Blystone* did not mention the Superior Court's decision in *Schaeffer*, nor did it suggest, in any way, that the location of the interception is relevant to whether a constitutional violation occurs.

This Court reached the same result in *Commonwealth v. Rodriguez*, 519 Pa. 415, 548 A.2d 1211 (1988), which we also decided before Fowler's trial. In *Rodriguez*, we upheld the admissibility of an intercepted conversation between a defendant and an informant who consented to wear a body wire. Again, the *Rodriguez* decision did not say that the location of the wiretap interception, whether it occurred in a home or elsewhere, affected the constitutional analysis.

This Court also handed down its decision in *Commonwealth v. Barone*, 520 Pa. 118, 552 A.2d 1048 (1989), before Fowler's trial. *Barone* is especially significant because it addressed the question of intercepting a conversation in a defendant's home. This Court issued a concise *per curiam* Order reversing the Superior Court's decision and remanding the case to the

Superior Court to address remaining issues. The per curiam Order in *Barone* expressly stated that the reversal was based on this Court's decision in *Blystone*. The Superior Court's initial decision was supported by a Memorandum Opinion,[8] which has no precedential value pursuant to Section 65.37 of the Internal Operating Procedures of the Superior Court. However, this Court's Order reversing the Superior Court's decision in *Barone I*, as all decisions of this Court, carried the weight of binding precedent. *Commonwealth v. Gretz*, 520 Pa. 324, 554 A.2d 19 (1989) (per curiam) (even if a panel decision of the Superior Court is unpublished, this Court's per curiam affirmance constitutes a binding decision of precedential authority on the question presented to and accepted for review by this Court). *But see Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996) (clarifying *Gretz* in cases in which this Court issues a per curiam affirmance without explaining the reason therefor).

The facts of *Barone* are set forth in the Superior Court's second Opinion, which was published, *Commonwealth v. Barone*, 383 Pa.Super. 283, 556 A.2d 908 (1989) (*Barone II* ), *allocatur denied*, 535 Pa. 613, 629 A.2d 1375 (1993), and states the following:

John A. Barone was charged with possession and delivery of a controlled substance as a result of an alleged sale of 2.3 grams of cocaine to Donald Kenyon in Barone's home on April 24, 1985. Kenyon, a police informant, was wearing a concealed recording device, which enabled law enforcement officials to record the conversation between Barone and Kenyon at the time of the sale. Barone was arrested on September 19, 1985, waived his right to a preliminary hearing, and filed a motion to suppress the recording made by the police at the time of the sale. Hearings were held, but the motion to suppress was denied.

\* \* \*

On direct appeal, [the Superior Court], in a memorandum decision held that the decision in [*Schaeffer* ] was determina-

**8.** This case is reported in a table of memorandum decisions at *Commonwealth v. Barone*, 375 Pa.Super. 613, 541 A.2d 25 (1988)(*Barone I* ).

tive that a warrantless, recorded interception of a person's conversation in his own home, even with the consent of the other party to the conversation, was an unreasonable search and seizure under Article I, § 8 of the Pennsylvania Constitution. Accordingly, [the Superior Court] reversed Barone's conviction and remanded for a new trial. The Supreme Court granted allocatur and by per curiam order directed as follows:

> The petition for allowance of appeal is granted, the order of the Superior Court is reversed pursuant to [*Blystone*], and the case is remanded to the Superior Court for further proceedings to dispose of respondent's remaining appellate issues.

*Id.* at 284—285, 556 A.2d at 908—909 (footnotes omitted). Based on this Court's reliance on *Blystone* to reverse the Superior Court's decision in *Barone I* and by that allow the Commonwealth to admit tape-recorded evidence, this Court decided that it was proper for the police to send an informant wearing a recording device into the defendant's home without prior court approval. Thus, it was clearly reasonable for trial counsel to conclude that this Court's per curiam reversal in *Barone* overruled the Superior Court's prior decision in *Schaeffer*, which also involved an intercepted conversation inside a defendant's home.

The Superior Court also handed down another Opinion directly on point with this case prior to Fowler's trial. In *Commonwealth v. Brion*, 381 Pa.Super. 83, 552 A.2d 1105 (1989), a panel of the Superior Court held that the Commonwealth was not required to obtain prior judicial approval before sending an informant into a defendant's home wearing a body wire.

The Superior Court's decision in *Brion* is significant because the facts were similar to the facts in this case, it was decided before Fowler's trial, and it expressly stated that this Court's *Blystone* decision had reversed the Superior Court's *en banc* decision in *Schaeffer sub silentio*. *See also Commonwealth v. Porreca*, 389 Pa.Super. 553, 556, n. 5, 567 A.2d 1044, 1050 (1989), *reversed on other grounds*, 528 Pa. 46, 595 A.2d 23

(1991)(interpreting *Blystone* as having overruled *Schaeffer sub silentio* ). The defendant in *Brion* filed a Petition for Allowance of Appeal, which this Court did not grant until June 14, 1994, nearly two years after Fowler's trial. *Commonwealth v. Brion*, 534 Pa. 652, 627 A.2d 730 (1993).

Thus, at the time of Fowler's trial, the relevant case law in Pennsylvania pertaining to recordings in one's home was clear that the police were not required to obtain prior judicial approval before sending an informant into a suspect's home with recording and transmitting equipment. Based on the United States Supreme Court's decision in *White*, and *On Lee*, this Court's decisions in *Blystone* and *Barone*, and the Superior Court's decisions in *Brion*,[9] and *Porreca*, which were all decided before Fowler's trial, trial counsel could have reasonably concluded that the tape-recorded evidence was admissible during Fowler's trial.

Indeed, the PCRA court properly stated that at the time of Fowler's trial in 1991, the Superior Court's decision in *Brion* was the law, and not *Schaeffer*. Though this Court had already granted Schaeffer's Petition for Allowance of Appeal at the time of Fowler's trial, it would have been reasonable to assume that this Court accepted that appeal to reverse the Superior Court's decision based on *Blystone, Barone*, and *Porreca;* all of which contradicted the Superior Court's decision in *Schaeffer*.

On June 1, 1993, this Court, being equally divided, issued a per curiam order that affirmed the Superior Court's decision in *Schaeffer. Commonwealth v. Schaeffer*, 547 Pa. 53, 688 A.2d 1143 (1993). However, this Court then granted reargument in *Schaeffer* and consolidated the case with *Brion*. Finally, on December 30, 1994, seven years after the Superior Court issued its decision in *Schaeffer*, this Court, being equally

---

**9.** Fowler argues that trial counsel should not have relied on the *Brion* decision at the time of his trial because it was a decided by a panel of the Superior Court, and *Schaeffer* was decided by the court *en banc*. However, the Superior Court panel in *Brion* did not purport to overrule *Schaeffer*. Rather, the *Brion* court correctly stated that this Court overruled *Schaeffer* in *Blystone*. The rationale of the *Blystone* decision, as well as this Court's decision in *Barone*, supports this conclusion.

divided, affirmed the Superior Court in a per curiam decision. *Commonwealth v. Schaeffer*, 539 Pa. 272, 652 A.2d 294 (1994). On that same date, which was almost five years after the Superior Court handed down its *Brion* decision, this Court also reversed the Superior Court in that case. *Commonwealth v. Brion*, 539 Pa. 256, 652 A.2d 287 (1994), *reargument denied*, (February 16, 1995).

Based on the plain language of the statute, and the decisional law as it existed at that time, counsel acted reasonably. We will not hold that trial counsel was ineffective because he did not predict changes in this chaotic area of the law. *Triplett.* To do so would undermine well-settled law from this Court and hold diligent and competent attorneys to an impossible standard, which we are not willing to do. Even if he had filed a motion to suppress the tape-recorded evidence, the motion would have been denied based on the law at that time, and counsel cannot be ineffective for failing to raise a meritless claim. *Pettus.*

Moreover, even if we were to assume *arguendo* that this claim has arguable merit, Fowler has not met his burden of proving that counsel's actions "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place" pursuant to Section 9543(a)(2)(ii) of the PCRA. A PCRA petitioner that alleges a constitutional violation also bears the burden of proving that the violation "so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i).

Tape-recorded evidence is one of the most reliable forms of evidence. A tape recording cannot commit perjury, forget facts, or be influenced by motive or bias. In *Blystone*, this Court stated the following:

Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also

be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat of injury will suppress unfavorable evidence and less chance that cross-examination will confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question. *Blystone* at 466, n. 18, 549 A.2d at 88, n. 18, *quoting White,* 401 U.S. at 753, 91 S.Ct. at 1126, 28 L.Ed.2d at 453 (1971). Thus, the admission of this evidence did not undermine the truth-determining process, but to the contrary, it was highly reliable and probative evidence of Fowler's guilt.

Finally, we are unpersuaded that Fowler is entitled to relief because this Court's decision in *Brion* should be applied retroactively. Because Fowler raised this claim as a challenge to the effectiveness of his attorney in a collateral proceeding pursuant to the PCRA, we are required to examine counsel's actions under the law as it existed at the time of Fowler's trial. It is therefore irrelevant that this Court has recently decided to give *Brion* retroactive application. *See Commonwealth v. Selby,* 547 Pa. 31, 688 A.2d 698 (1997)(pursuant to *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983), this Court gave *Brion* retroactive effect only to cases on direct appeal where the issue is properly preserved ). We decline to give *Brion* retroactive application to cases in which the issue is raised in a collateral appeal pursuant to the PCRA. To do so would contradict well-settled law of this Commonwealth that requires us to assess the effectiveness of trial counsel based on the law as it existed at the time of trial.

## CONCLUSION

After thoroughly reviewing the entire record, we are convinced that trial counsel acted reasonably and mounted a vigorous defense. Fowler has not overcome the presumption that counsel was effective. Thus, the trial court and Superior Court correctly determined that Fowler did not meet his

burden of proof pursuant to the PCRA. Accordingly, we affirm the Order of the Superior Court.

ZAPPALA, CAPPY and NIGRO, JJ., concur in the result.