COMMONWEALTH of Pennsylvania

v.

**Robert BAILEY, Jr., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 6, 2001.

Decided April 26, 2001.

Ronald H. Elgart, Levittown, for appellant.

Jennifer Schorn Van Dyke, Asst. Dist. Atty., Doylestown, for appellee.

Before SMITH and PELLEGRINI, Judges, JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Robert Bailey, Jr. appeals from the April 17, 1998 order of the Court of Common Pleas of Bucks County (trial court) denying Bailey's post-trial motions. For the reasons that follow, we affirm.

The trial court found the following facts. This case has its origin in the April 23, 1996 primary election for Republican Committeeman in Bensalem Township, Upper West, District No. 02040. In that election, Bailey received 152 votes. His opponent, Thomas Risich, received 151 votes.

In the weeks prior to the election, Eileen Barthmaier, a political ally of Risich, met on more than one occasion with the Bucks County Board of Elections/Voter Registration Office (Election Board), including Deena Dean, Election Board Director. Barthmaier questioned the potential casting of absentee ballots and attempted to challenge certain voters and absentee ballots on the day of the primary, but her challenge was to no avail. On April 26, 1996, Barthmaier and Risich delivered a letter to the Election Board advising it that they were officially challenging the results of the Republican Committeeman election.

In addition, Barthmaier and Risich filed a petition to recanvass the votes cast. On May 17, 1996, President Judge Kenneth J. Biehn of the Bucks County Court of Common Pleas conducted the recanvass.

After being denied any assistance by the Election Board, Barthmaier advised Dean and Peter A. Glascott, the County Solicitor, that she was going to the District Attorney's Office. Barthmaier subsequently contacted the District Attorney's Office, which conducted an investigation. On August 14, 1996, the District Attorney filed a Notice of Submission of Investigation by the Grand Jury, which inquired into allegations against Bailey under the authority of Section 4550(a) of the Investigating Grand Jury Act, 42 Pa.C.S. § 4550(a).

On September 19, 1996, Dean testified before the Grand Jury that her office, Director of the Election Board, had no

"capability" or "investigative service" to investigate the authenticity of residences on voter applications. On February 27, 1997, the Grand Jury recommended that charges be brought against Bailey and an arrest warrant was obtained.

Trial by jury commenced on June 24, 1997 and on July 1, 1997, Bailey was convicted of three violations of Section 1503 of the Pennsylvania Voter Registration Act (voter registration violations); [1] one violation of Section 1853 of the Pennsylvania Election Code (absentee ballot violations) [2]; and one violation of Section 902 of the Crimes Code, 18 Pa.C.S. § 902 (criminal solicitation). On July 18, 1997, Bailey was sentenced to cumulative probation of four years, fines in the amount of $8,500 and a ten-year loss of the right of suffrage.

Following sentencing, Bailey filed post-trial motions alleging: (1) that the prosecution was void *ab initio* because the Election Board failed to conduct an investigation; (2) that he should not have been charged with general criminal solicitation under the Crimes Code where there are more specific voter registration offenses contained in the Voter Registration Act and the Election Code; and (3) that his trial counsel was ineffective for failing to raise these issues at trial. [3]

The trial court, however, rejected Bailey's arguments. Citing several provisions of the Investigating Grand Jury Act (IGJA), 42 Pa.C.S. §§ 4541—4553, the trial court reasoned that nothing in the Voter Registration Act or the Election Code indi-cated that the General Assembly intended to downsize the power of district attorneys or to limit their use of investigating grand juries in cases involving allegations of voter fraud. The trial court recognized that under the IGJA, investigating grand juries have the duty to investigate "public corruption," which said Act defines in part as the "unlawful activity under color or in connection with any public office . . . of: . . . . (2) any candidate for public office or the agent of any candidate for public office." Section 4542 of the IGJA, 42 Pa. C.S. § 4542.

The trial court also rejected Bailey's contention that his conviction for criminal solicitation under Section 902 of the Crimes Code should be overturned because he should have been charged with a more specific offense under either the Voter Registration Act or the Election Code. The trial court determined that the offense of criminal solicitation was not covered by any of the specific offenses listed in either the Voter Registration Act or the Election Code.

In addition, the trial court rejected Bailey's argument that his trial counsel was ineffective because he did not file a motion for dismissal based on the arguments Bailey raised in his post-trial motions. The trial court reasoned that because those arguments were addressed and rejected by the court, the failure of Bailey's trial counsel to raise them earlier did not constitute ineffectiveness.

---

1. Act of June 30, 1995, P.L. 170, 25 P.S. § 961.1503.

2. Act of June 3, 1937, P.L. 1333, *added by* Section 3 of Act of January 8, 1960, P.L. (1959) 2135, *as amended*, 25 P.S. § 3553.

3. On March 23, 1998, an evidentiary hearing to supplement the record was held. At that hearing, Barthmaier testified that in the Spring of 1996, she met with Dean, Director of the Election Board, and Glascott, the County Solicitor, to present her suspicions regarding the Committeeman election. Barthmaier further testified that although she tried to show the contents of her investigations to Dean and Glascott at that meeting, they refused to help her. The trial court accepted Barthmaier's testimony as believable, credible and acceptable.

Consequently, on April 17, 1998, the trial court issued an order denying Bailey's post-trial motions. On November 5, 1998, this Court initially quashed Bailey's appeal as untimely. However, following a hearing under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541—9546, the trial court entered a December 13, 1999 order reinstating Bailey's right to direct appeal.

■ Bailey's first argument is that his convictions for voter registration violations should be overturned and the proceedings against him dismissed as void *ab initio* because the Voter Registration Act limits a prosecutor's power to act prior to an investigation and recommendation by a county registration commission. Specifically, Bailey cites Section 1702 of the Voter Registration Act, 25 P.S. § 961.1702, which provides:

(a) **Investigation.**—Except as provided in section 1701, each commission shall investigate alleged violations of this act within its county and report apparent violations to the district attorney of the county.

(b) **Prosecution.**—Subject to section 205(a)(3) through (5) of the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act, the district attorney shall have prosecutorial jurisdiction over violations reported under subsection(a).

Bailey maintains that under Section 1702(a), a county registration commission must first investigate alleged violations within its county and then report any apparent voter registration violations to the district attorney of that county. Bailey further contends that in view of Section 1702(b), the district attorney's jurisdiction is limited solely to alleged violations reported under subsection(a). Therefore, Bailey claims that because the Election Board in the present case did not investigate or report any "suspicious circum-stances" to the District Attorney's Office, the District Attorney could not act unilaterally.

This Court disagrees. The trial court found that Barthmaier met with Dean, Director of the Board of Elections, as well as other Board representatives, on more than one occasion prior to the April 23, 1996 election concerning the potential casting of certain absentee votes in the primary election. Findings of Fact (FF) Nos. 3–4. Barthmaier also attempted to challenge certain voters and absentee ballots on the day of the primary, but was unsuccessful. FF No. 5. On April 26, 1996, following the election, Barthmaier and Risich sent a letter to the Election Board notifying it that they were officially challenging the election. FF No. 6.

Although Barthmaier tried to show the contents of her investigation to the Election Board, Dean and County Solicitor Glascott refused to help her. FF No. 11. It was at this point that Barthmaier advised Dean and Glascott that she was going to the District Attorney's Office. FF No. 12.

Clearly, Barthmaier and Risich acted in accordance with Section 1701(a) of the Voter Registration Act by reporting alleged voter registration violations to the Election Board. However, the Election Board refused to take any action concerning their allegations. As a result, Barthmaier and Risich were forced to contact the District Attorney's Office.

Moreover, after the investigating grand jury was convened, Dean testified before it that the Election Board had no "capability" or "investigative service" to investigate the authenticity of residences on voter applications. FF Nos. 17–18. Hence, even though the Election Board was notified about possible registration violations in the April 23, 1996 Republican Committeeman

primary election, it did not have the power to investigate those allegations.

However, in accordance with Bailey's interpretation of Section 1701, any inquiry into his alleged wrongdoing would be terminated by the Election Board's refusal to investigate the matter. This Court, however, agrees with the trial court that the General Assembly did not enact Section 1701 to limit the county district attorney's jurisdiction over alleged voter registration violations to cases where the county registration commission had conducted an investigation.

■ Nothing in Section 1701(b) states that the county district attorney's jurisdiction is limited only to cases where the county registration commission has investigated and determined that an apparent violation exists.[4] Bailey's interpretation of Section 1701 would prevent the district attorney's office from prosecuting voter registration violations whenever the local county registration commission declined or refused to act for any reason. Such a result would be unreasonable. It is presumed that in enacting a statute, the General Assembly did not intend a result that is unreasonable. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1); *Shoenfelt v. Department of Public Welfare*, 49 Pa.Cmwlth. 596, 412 A.2d 181 (Pa.Cmwlth.980).

■ Moreover, it is clear that district attorneys have the power and the duty under Section 1 of the Act of July 5, 1957, P.L. 484, *as amended*, 16 P.S. § 1402(a)

"to represent the Commonwealth's interests in the enforcement of its criminal laws." *Commonwealth ex rel. Specter v. Bauer*, 437 Pa. 37, 41, 261 A.2d 573, 575 (1970). Under the IGJA, a district attorney may apply to the common pleas court for an order summoning an investigative grand jury to look into possible criminal activity, including the unlawful activities of candidates for public office. Moreover, even if the grand jury had been impaneled to investigate a completely different subject, if it came across evidence of unlawful activities of a candidate for public office in that county, it has the authority to investigate such unlawful activity. *See Commonwealth v. McCauley*, 403 Pa.Super. 262, 588 A.2d 941 (1991).

Hence, this Court concludes that a county district attorney, by means of an investigative grand jury, has the authority to investigate allegations of unlawful voter registration activities on behalf of a candidate for public office, whether or not such allegations have first been investigated by a county registration commission. *Bauer*; IGJA, 42 Pa.C.S. §§ 4541–4553.

Second, the facts in the present case also indicate that the procedure outlined in Section 1701 of the Voter Registration Act was followed. Before the District Attorney proceeded with the investigation and prosecution, the Director of the Election Board testified before the Grand Jury that the Election Board lacked the capability to investigate the allegations presented to it. Therefore, this Court rejects Bailey's contention that the criminal proceedings

---

4. As discussed later in this opinion in connection with Bailey's conviction for a violation of the Election Code, in *Commonwealth v. Beck*, 715 A.2d 1239 (Pa.Cmwlth.1998), *appeal denied*, —— Pa. ——, —— A.2d ——, 1999 WL 153077 (602 W.D. Alloc. Dkt.1998, March 23, 1999), this Court stated that independent of the Election Code, prosecutors have the authority to investigate and prosecute Code violations. We believe that the *Beck* rationale is equally applicable to voter registration violations enumerated in the Voter Registration Act. As such, a county district attorney has prosecutorial jurisdiction over voter registration violations regardless of whether the county registration commission has investigated the matter.

against him were rendered null and void because the Election Board did not investigate the allegations against him prior to the District Attorney's Office's investigation.

■ With regard to Bailey's conviction for a violation of Section 1853 of the Election Code, 25 P.S. § 3553, relating to absentee ballot violations, he contends that the Election Code required that the Election Board in the present case, not the District Attorney's Office, investigate the matter. To support his position, Bailey cites Section 302(i) of the Election Code, 25 P.S. § 2642(i), which states that the county boards of elections shall investigate alleged violations of the Election Code within their respective counties and report all suspicious circumstances to the district attorney.

■ However, in *Commonwealth v. Beck*, 715 A.2d 1239, 1241 (Pa.Cmwlth. 1998), *appeal denied*, —— Pa. ——, —— A.2d ——, 1999 WL 153077 (602 W.D. Alloc. Dkt.1998, March 23, 1999), this Court recognized that "[i]ndependent of the Election Code, prosecutors have the authority to investigate and prosecute criminal violations, and the Code provides for more than one method by which violations may be brought to the attention of prosecutorial authorities." Pursuant to Section 1642 of the Election Code, 25 P.S. 3260b,[5] county district attorneys have jurisdiction over any violation of the Election Code (with the exception of violations connected with statements or reports filed with the Secretary of the Commonwealth). " 'Prosecutorial jurisdiction,' when used without qualification, means the broad power to investigate violations of criminal statutes and to prosecute the offenders on behalf of the Commonwealth." *Beck*, 715 A.2d at 1241.

In view of *Beck*, this Court rejects Bailey's contention that the Election Code prohibited the District Attorney from utilizing an investigative grand jury to investigate the allegations that Bailey violated Section 1853 of the Election Code. Under Section 1642, the District Attorney's Office had jurisdiction over these allegations. *Beck*.[6] As such, Bailey's claim that his conviction for violating Section 1853 is rendered null and void because the Election Board did not first investigate the allegations against him wholly lacks merit.

■ Bailey's third argument is that his conviction for criminal solicitation under Section 902 of the Crimes Code, 18 Pa.C.S. § 902, should be overturned because he should have been charged with a more specific offense under either the Voter Registration Act or the Election Code. Citing Section 1514 of the Voter Registration Act,[7] 25 P.S. § 961.1514, and *Commonwealth v. Bidner*, 282 Pa.Super. 100, 422 A.2d 847 (1980),[8] Bailey contends that he should not have been charged under a general penal provision of the Crimes Code.

---

5. Added by Section 2 of the Act of October 4, 1978, P.L. 893.

6. Bailey contends that *Beck* should be limited in scope to prosecution of violations of the Election Code's campaign finance provisions. This Court disagrees. Citing Section 1642 of the Election Code, *Beck* clearly states that district attorneys have prosecutorial jurisdiction over all violations of the Code.

7. This Section provides: "The provisions of 18 Pa.C.S. §§ 4902 (relating to perjury), 4903 (relating to false swearing) and 4904 (relating to unsworn falsification to authorities) apply to violations of this act."

8. In *Bidner*, the Superior Court recognized that it is "the policy of the law not to permit prosecutions under the general provisions of the penal code when there are applicable special provisions available." 422 A.2d at 851.

This Court disagrees. As the trial court noted, *Bidner* applies only to crimes specifically outlined in the Election Code and the offense of solicitation to commit a crime is not covered by any of the specific offenses contained in that statute. Moreover, nothing in Section 1514 of the Voter Registration Act excludes Section 902 from applying where no similar provision exists in that statute. Hence, we reject Bailey's contention that he was unlawfully charged with a violation of Section 902 of the Crimes Code.

Bailey's fourth argument is that his trial counsel was ineffective in that he failed to pursue a motion for dismissal of the prosecution on the grounds raised in Bailey's post-trial motions and argued before this Court. Bailey contends that if this Court finds merit to his appellate arguments, there is no reason why his trial counsel should not have moved for a dismissal on those grounds.

■ However, as discussed above, this Court has rejected Bailey's arguments as lacking in merit. Our Supreme Court has recognized that there is a presumption that trial counsel has been effective and that "[c]ounsel can never be deemed ineffective for failing to raise a claim that has no merit." *Commonwealth v. Fowler*, 550 Pa. 152, 156, 703 A.2d 1027, 1029 (1997). Accordingly, Bailey's claim that his trial counsel was ineffective rings hollow.

In view of the foregoing, the order of the trial court denying Bailey's post-trial motions is affirmed.

### ORDER

AND NOW, this 26th day of April, 2001, the April 17, 1998 order of the Court of Common Pleas of Bucks County is hereby affirmed.