J-S35007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JULIO CESAR MARTINEZ-OCASIO, | |
| Appellee | No. 874 MDA 2016 |

Appeal from the PCRA Entered Order April 22, 2016
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0002495-2012

BEFORE:  BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED AUGUST 14, 2018**

The Commonwealth appeals from the post-conviction court's April 22, 2016 order granting Appellee's, Julio Cesar Martinez-Ocasio, petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, and awarding Appellee a new trial based on the court's conclusion that his trial counsel acted ineffectively by failing to call character witnesses on Appellee's behalf.  After careful review, we affirm.

In this appeal, the Commonwealth presents the following issue for our review:

1. Whether the PCRA court erred in granting [Appellee] a new trial where:

   a. the claim lacks arguable merit as the alleged character traits were not at issue during the trial; and

   b. trial counsel had a reasonable basis for not calling character witnesses; and

    c. the decision not to include character witnesses did not prejudice [Appellant] as [Appellant] admitted to violating the law and driving in a reckless manner and where the evidence of guilt was overwhelming?

Commonwealth's Brief at 4.

We begin by recognizing that,

[i]n reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error." ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 532 (2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." ***Id.***

***Commonwealth v. Matias***, 63 A.3d 807, 810 (Pa. Super. 2013).

With this standard of review in mind, we have carefully examined the certified record, the briefs of the parties, and the applicable law. We have also assessed the detailed opinion of the Honorable John S. Kennedy of the Court of Common Pleas of York County filed on October 24, 2017. We conclude that Judge Kennedy's thoughtful and comprehensive analysis is supported by the record, and that he adequately addresses the issues raised by the Commonwealth. Moreover, we discern no legal error in Judge Kennedy's conclusion that Appellee's trial counsel acted ineffectively and, therefore, Appellee is entitled to a new trial. Consequently, we affirm the PCRA court's order granting Appellee's petition on the basis set forth in Judge Kennedy's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/14/18

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :   CP-67-CR-0002495-2012

               v.                :   874 MDA 2016

JULIO CESAR MARTINEZ-OCASIO    :

### APPEARANCES:

**STEPHANIE ELIZABETH LOMBARDO, Esq.**
For the Commonwealth/Appellant

**WILLIAM BRAUGHT, Esq.**
For the Defendant/Appellee

### OPINION PURSUANT TO RULE OF APPELLATE PROCEDURE 1925(a)

On May 20, 2016, Appellant filed a Notice of Appeal to the Pennsylvania Superior Court from an Order issued on April 22, 2016 and filed on May 11, 2016, granting Appellee's request for a new trial under the Post Conviction Relief Act ("PCRA'") codified at 42 Pa.C.S. §9541 *et seq.* On May 23, 2016, Appellant was directed to file a Concise Statement of Errors pursuant to Rule 1925(b), which was filed on June 13, 2016. We now issue the following Opinion:

### FACTS AND PROCEDURAL HISTORY

The pertinent factual history has been set forth in our previous 1925(a) Opinion issued on April 30, 2014 and adopted by the Superior Court of Pennsylvania in its opinion issued in this case:

> On August 10, 2011 at approximately 6:30 p.m., Dana Briggs (the "Victim") suffered serious bodily injury as a result of an automobile collision occurring along Route 30 in East York, Pennsylvania. The Victim was traveling eastbound in Route 30 *en route* to her residence when a BMW collided with a Mercedes in the westbound lane, thereby causing the Mercedes to cross the center median and strike the Victim's Chevrolet. [Appellee] was the operator of said BMW. The

1

EXHIBIT D

Victim lost consciousness as a result of the collision, and she remained in a coma for approximately one month thereafter. The Victim spent the following two months in a hospital and rehabilitation facility, and symptoms of her injuries persisted through the date of trial.

The speed limit governing the stretch of roadway in question is forty (40) miles per hour. The evidence presented at trial shows a number of speed limit and other warning signs were prominently posted and would have been visible to [Appellee] as he traveled westbound on Route 30. The evidence also indicates the collision occurred on a roadway that is highly congested most evenings. More specifically, the collision ensued as [Appellee's] vehicle approached the congested intersection of Route 30 and North Hills Road, adjacent to North Hills Elementary School and various retail stores.

At trial, Timothy K[ie]hl testified he witnessed the collision while traveling westbound on Route 30. Mr. K[ie]hl observed the BMW pass him in a "flash", traveling at a speed he estimated to be one hundred (100) miles per hour. Similarly, Constance Arnold, another eyewitness to the collision, testified that she heard "a loud sound, like a whiz, fly by" her just prior to the collision. The expert reconstructionist who testified at trial was unable to form any conclusions with regard to the speed at which [Appellee's] vehicle was traveling.

Mr. K[ie]hl's opinion was that the drivers of the BMW and Mercedes were racing each other. Anthony Miller, the driver of the Mercedes, admitted to police that it probably appeared as though the cars were racing. A written statement signed by [Appellee] describes the Mercedes as "the car that was racing previously against me." The testimony clearly indicates the vehicles weaved in and out of traffic just prior to impact. Kathy Ermolovich provided eyewitness testimony that the impact was a result of [Appellee's] attempt to "wedge" his BMW between two vehicles traveling in close proximity to one another in the left lane. [Appellee's] vehicle collided with the Mercedes as a result, and the Mercedes then crossed the median and struck the Victim's vehicle. An on-scene inspection of the vehicles failed to uncover any obvious mechanical defects in any of the vehicles other than those caused by the collision itself.

Commonwealth v. Martinez-Ocasio, No. 61 MDA 2014, at 2-3 (Pa. Super. filed 4/21/15) (unpublished memorandum)(record citations omitted).

Appellee was charged with the felony offenses of aggravated assault, 18 Pa.C.S. §2702 §§A1, and aggravated assault by motor vehicle, 75 Pa.C.S. §3732.1 §§A, the summary offenses of reckless driving, 75 Pa.C.S. §3736 §§A, careless driving, 75

2

EXHIBIT D

Pa.C.S. §3714 §§A, illegal racing, 75 Pa.C.S. §3367 §§B, driving at unsafe speed, 75 Pa.C.S. §3361 and the misdemeanor offense of recklessly endangering another person ("REAP"), 18 Pa.C.S. §2705. Two jury trials were held. The first trial was held on January 7-10, 2013, which resulted in Appellee's conviction of aggravated assault by vehicle and REAP. He was also found guilty by the trial court of the summary offenses of reckless driving, careless driving and failure to drive at a safe speed. Appellee was acquitted of illegal racing. However, the jury could not reach a verdict on the additional charge of aggravated assault. As a result, Appellee was retried in September 9-10, 2013, and the prior charges of which he was convicted were again submitted to the jury. His sentencing was postponed until the completion of the second trial.

In the second trial, the jury found Appellee not guilty of aggravated assault, aggravated assault by vehicle and illegal racing, but found him guilty of REAP. On October 21, 2013, Appellee was sentenced concurrently to nine (9) to twenty-three (23) months of incarceration followed by twenty-four (24) months of probation for the charges of aggravated assault by vehicle and REAP. Appellee paid fines and court costs for the summary offenses of reckless driving, careless driving and failure to drive at a safe speed.

Appellee filed a post-sentence motion followed by a timely direct appeal to the Superior Court of Pennsylvania on December 27, 2013. The Superior Court affirmed Appellee's sentence on April 21, 2015. (See 61 MDA 2015 Non-Precedential Decision). Appellee filed a Petition for Allowance of Appeal with the Supreme Court on May 22, 2015. (See docket at 512 MAL 2015). The Supreme Court denied Appellee's Petition for Allowance of Appeal by Order dated February 1, 2016. As such, Appellee's direct

EXHIBIT D

appeal was completed and the trial court entered an Order on February 3, 2016, instructing Appellee to report to the York County Prison to begin serving his sentence. Appellee's postponed report date was March 2, 2016.

On March 10, 2016, Appellee, through privately-retained counsel, filed a timely first Petition for Post-Conviction Collateral Relief requesting that his judgment of sentence be vacated and that he be granted a new trial. In his PCRA Petition, Appellee alleged the ineffective assistance of trial counsel which so undermined the truth-determining process that no reasonable adjudication of guilt or innocence could have taken place. Specifically, Appellee alleged that 1) trial counsel failed to investigate and call character witnesses on Appellee's behalf who would testify as to Petitioner's character for being law-abiding, truthful, non-violent and not reckless and that 2) trial counsel gave advice so unreasonable that it vitiated the Appellee's knowing and intelligent decision to not testify in his own defense.

On April 22, 2016, a PCRA hearing was held to address Appellee's claims. This Court heard testimony from trial counsel as well as from several intended witnesses that could have testified on Appellee's character at the time of trial. This Court found that Appellee adequately explored the issue of whether he should testify at trial with his trial counsel and did not find that trial counsel was ineffective as to that claim. However, this Court found that trial counsel was ineffective as he did not have a good reason for not calling character witnesses who could have testified as to Appellee's good character traits for truthfulness, peacefulness and law-abiding. This Court found that the case presented a difficult decision for the jury and that the standard instructions indicate that character testimony alone can be a basis for a reasonable doubt. For these reasons,

4

EXHIBIT D

Appellee's PCRA Petition was granted and a new trial was ordered. The Commonwealth timely appealed the decision and the instant appeal followed.

## DISCUSSION

The Commonwealth/Appellant argues the following issues in their 1925(b) Statement:

1. The PCRA court erred in granting Appellee's petition for post-conviction relief on the basis that trial counsel was ineffective for not calling character witnesses to testify. Specifically, the Commonwealth argues:

   a. that the claim lacks arguable merit as the alleged character traits were not at issue during the trial (Notes of PCRA testimony pages 81, 82-83);

   b. that trial counsel had a reasonable basis for not calling character witnesses (Notes of PCRA testimony pages 52-53, 55-56); and

   c. that the decision to not include character witnesses did not prejudice Appellee as Appellee admitted to violating the law and driving in a reckless manner (Notes of PCRA testimony pages 81, 85-86; *see also* Commonwealth v. Martinez-Ocasio, 61 MDA 2014, unpublished memorandum opinion dated April 21, 2015, pages 8-9, 9-10, 11).

Generally, in deciding claims of ineffective assistance of counsel, the following three-prong test (also known as the *Pierce*-test) is applied: 1) whether the issue underlying the charge of ineffective assistance has arguable merit; 2) whether the course of conduct pursued by counsel had some reasonable basis designed to effectuate the client's interests; and 3) whether there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the challenged proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Commonwealth v. Ross, 856 A.2d 93, 97 (Pa. Super. Ct. 2004). Trial counsel is presumed to have been effective. Commonwealth v. Fowler, 703 A.2d 1027, 1028 (Pa. 1997). With

5

EXHIBIT D

these principles in mind, we now address Appellant's claims.

Appellant's first claim directly addresses the first prong of the ineffective assistance of counsel test in that the claim lacks arguable merit as the alleged character traits were not at issue during the trial. Pennsylvania law has long since established that an individual on trial for a criminal offense is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Commonwealth v. Luther, 463 A.2d 1073, 1077 (Pa. Super. Ct. 1983). The Superior Court further clarified that "[s]uch evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged." Id. Furthermore, "[t]he rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character...It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence...Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation." Id.

In addition, in situations where only two direct witnesses are involved, the credibility of witnesses is of prime importance and character evidence becomes critical to the jury's determination of credibility. Commonwealth v. Weiss, 606 A.2d 439, 442 (Pa. 1992). Since evidence of good character is substantive, it is not merely

6

"makeweight evidence" and can "in and of itself, create reasonable doubt of guilt and, this, require a verdict of not guilty." Id. The Superior Court summarized in Commonwealth v. Reyes-Rodriguez that "[u]nder Pennsylvania Rule of Evidence 404(a)(1), a 'person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.' Pa. R.E. 404(a)(1). Under Rule 404(a)(2)(A), a criminal defendant may introduce evidence of a 'pertinent' character trait." Commonwealth v. Reyes-Rodriguez, 111 A.3d 775, 781 (Pa. Super. Ct. 2015). "Pertinent" is defined as "relevant to the crimes charged." Commonwealth v. Minich, 4 A.3d 1063, 1071 (Pa. Super. Ct. 2010).

In the instant case, Defendant's character was placed at issue by virtue of the offenses he was charged with as well as during trial. Specifically, Defendant was charged with aggravated assault by vehicle and recklessly endangering another person. The traits of being law-abiding, truthful, non-violent and not reckless are all relevant to the crimes of aggravated assault by vehicle and recklessly endangering another person. The trait of recklessness is also an element of each crime and must be proven beyond a reasonable doubt. The elements for the crime of aggravated assault by motor vehicle are "[a]ny person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury." 75 Pa.C.S.A. §3732.1. The elements for the crime of recklessly endangering another person are "[a] person commits a

7

misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. §2705. As such, we find that the traits of being law-abiding, truthful, non-violent and not reckless are pertinent to the crimes charged.

The Commonwealth also argues that Defendant's traits of being law-abiding, truthful, non-violent and not reckless were not at issue during the trial. We disagree with this contention for two primary reasons. First, several witnesses testified at trial that Defendant was racing the driver of the Mercedes and was also changing lanes erratically. The Commonwealth first called Timothy F. Kiehl to testify as to his observations regarding Defendant's driving:

> ATTORNEY MELLOTT:   And when you saw the two black cars go by you one after another and as a flash, as you've described it, do you know approximately about how fast they were going?
>
> MR. KIEHL:  To me, like, a hundred – a hundred miles an hour.  Like, again, a flash, if someone were to fly past you.  You know, that's just my opinion.
>
> ATTORNEY MELLOTT:   Sure.  And did it appear as if these two cars were racing or driving some other way?
>
> MR. KIEHL:  Actually, that was my first response that I initiated to the police – policeman that I gave my information to, that they were racing. That was my first reply.
>
> ATTORNEY MELLOTT:   So that was based on what you've observed at the time?
>
> MR. KIEHL:  Yes.
>
> \*\*\*
>
> ATTORNEY DUBBS:     Do you remember as far as telling him that you saw the BMW cross into the left-hand lane, clip the Mercedes, and that was the action that caused the Mercedes to spin out of control?

8

MR. KIEHL: No, I do not. I don't recall that.

ATTORNEY DUBBS: So if he would note that in his report, he would be incorrect that that's what you told him?

MR. KIEHL: I guess if that's what he noted that I said, yes.

(Tr. of January 7-10, 2013, p. 113, 121.)

Mr. Kiehl's testimony alleged that Defendant was speeding to about one hundred miles an hour as well as racing the driver of the Mercedes. Furthermore, Mr. Kiehl's testimony was also that Defendant "clipped" the Mercedes as he was changing lanes, implying that Defendant changed lanes in a reckless manner. The Commonwealth also called Officer Ryan Thomas to testify as to his interactions with Defendant regarding statements about the accident:

> ATTORNEY MELLOTT: Certainly. All right. And, Officer Thomas, now addressing your interactions with the other individual, Julio Martinez-Ocasio, at the scene of the crash, did that particular Defendant make any statements to you regarding the incident at the time?
>
> OFFICER THOMAS: He did. I asked him as I asked Mr. Miller what happened. He told me that he was going the speed limit, and when he went to merge from the right lane into the left lane, the vehicle, in his words, came flying up behind me going really fast.
>
> He stated that after their vehicles had collided in the westbound lanes, the vehicle then jumped the median into the eastbound lanes and collided with the Cavalier.

(Tr. of January 7-10, 2013, p. 164.)

Officer Thomas' interactions with Defendant resulted in a polar opposite recount of the events. Defendant, in his statement to Officer Thomas, alleged that he was going the speed limit and that as he changed lanes, the Mercedes sped up from behind him,

EXHIBIT D

which resulted in the collision between Defendant's vehicle and the Mercedes. Sergeant Brian T. Wilbur, who arrived at the scene of the accident a little later, was advised that "there were some witnesses statements said that two of the vehicles might have been racing in the westbound lanes, one of which crossed over the median." (Tr. Of January 7-10, 2013, p. 173.) Sergeant Wilbur later testified about Defendant's statement:

ATTORNEY MELLOTT:   Okay. And what's he say in his statement?

SERGEANT WILBUR:   Lower speed to around 40 plus changing lane from right side to left side to prevent hit a car in front of me. The car that was racing previously against me saw an open lane and increase his speed to pass me, causing the car to lose control and hit me at the end driver side of the car and move from left up lane to the other left down lane and hitting – the arrows are referring to his diagram – left down lane and hitting others in the opposite direction.

***

ATTORNEY HOFFMAN:   Okay. And what you're testifying to is that not that he said he was racing, but you asked him a question about why people thought he was racing, and he said – did he say yes to that question? I'm a little confused. Can you explain that for me?

SERGEANT WILBUR:   I believe I asked him, were you – I explained to him, I said, there's some witness statements that indicated that you were possibly racing another vehicle. And then I said, were you racing a vehicle?

And he said, Yes.

ATTORNEY HOFFMAN:   Okay. But he never actually said that he was racing, because you testified before that he – and I'm assuming Julio here – but he didn't tell me that they were racing. Do you remember saying that before?

SERGEANT WILBUR:   He didn't use the word "racing." I used the word "racing." He answered my question.

ATTORNEY HOFFMAN:   Okay. Thank you.

10

EXHIBIT D

(Tr. of January 7-10, 2013, pp. 213-214.)

Sergeant Wilbur confirmed in his testimony that Defendant had never used the word "racing" himself. Rather, it appeared that Mr. Kiehl originally stated that he believed the two vehicles were racing and that the officers questioned others about whether they were racing based on Mr. Kiehl's statements. Accordingly, Mr. Kiehl's testimony directly placed Defendant's character at issue when he alleged that Defendant was racing and recklessly changing lanes.

Second, the standard jury instructions given at trial for the charges of aggravated assault by vehicle and recklessly endangering another person also place Defendant's character at issue. The 3rd edition of the Pennsylvania Suggested Standard Criminal Jury Instructions for the crimes of aggravated assault by vehicle and recklessly endangering another person states as follows:

17.3732.1 (Crim) Aggravated Assault by Vehicle
1. The defendant is charged with aggravated assault by vehicle. The crime of aggravated assault by vehicle requires that the defendant be in violation of some section of the Vehicle Code, a local ordinance, or any other law related to the operation of a motor vehicle when the serious bodily injury of the victim occurs. In this matter, the defendant is charged with aggravated assault by vehicle while engaged in the violation of section *[section number]* of [the Vehicle Code] *[other statute]*. Section *[section number]* provides: *[At this point, quote the language or paraphrase the relevant portions of the one or more underlying statutes or ordinances allegedly violated by the defendant, including the relevant mens rea for each.]*
2. In order to find the defendant guilty of aggravated assault by vehicle, you must be satisfied that the Commonwealth has proven each of the following elements beyond a reasonable doubt:
*First*, that the defendant committed the underlying violation of section *[[[[section number] [Note: Since enhanced penalties are applicable if the underlying Motor*

11

EXHIBIT D

*Vehicle Code violation is either section 3325 (relating to duty of driver on approach of emergency vehicle) or section 3327 (relating to duty of driver in emergency response areas), where those enhanced penalties are sought, the verdict slip should direct the jury to make a specific finding beyond a reasonable doubt as to which Motor Vehicle Code section was violated in satisfaction of this element.]*

*Second*, that the defendant acted recklessly or with gross negligence by [[[[driving in a manner] [engaging in conduct] that violated section *[section number]*;

*Third*, that *[name of victim]* suffered serious bodily injury; and

*Fourth*, that the defendant's violation of section *[section number]* was the cause of injury.

*[Where active work zone enhancement is charged:]*

[*Fifth*, that the offense occurred in an active work zone, that is, the portion of an area of a highway where construction, maintenance, or utility work activities are being conducted, which is properly signed as a work zone in accordance with regulations of the Department of Transportation, and where construction, maintenance, or utility workers are located on the roadway, berm, or shoulder.]

3. "Recklessly" for purposes of this offense requires that the defendant be [[[[driving in a manner] [engaging in conduct] that violates section *[section number]* when [he] [she] consciously disregards a substantial and unjustifiable risk that [his] [her] [driving] [conduct] will cause death, the nature and the degree of the risk being such that it is grossly unreasonable for [him] [her] to disregard it.

4. "Grossly negligent" for purposes of this offense requires that the defendant [drive in a manner] [engage in conduct] that violates section *[[[section number]* when [he] [she] should be aware of a substantial and unjustifiable risk that [his] [her] [driving] [conduct] will cause death, the nature and degree of the risk being that it is grossly unreasonable for [him] [[[her] to fail to recognize the risk. In deciding whether the defendant's [[[[driving] [conduct] was reckless or grossly negligent, you should consider all of the relevant facts and circumstances, including the nature and intent of the defendant's [driving] [conduct] and the circumstances known to [him] [her].

5. Serious bodily injury means any bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

12

EXHIBIT D

6. If you are satisfied that the Commonwealth has proven the above elements of aggravated assault by vehicle beyond a reasonable doubt, you may find the defendant guilty. However, if you are not satisfied beyond a reasonable doubt, you must find the defendant not guilty.

Pa. SSJI (Crim), §17.3732.1 (2016).

15.2705 (Crim) Recklessly Endangering Another Person
1. The defendant has been charged with recklessly endangering another person. To find the defendant guilty of this offense, you must find that the defendant recklessly did something that placed or may have placed [name of victim] in danger of death or serious bodily injury.
2. A person acts recklessly with respect to serious bodily injury when he or she consciously ignores a great and unjustifiable risk that what he or she is doing will cause another person to be seriously injured. The risk must be so serious that, considering what a defendant did and what his or her intentions were, he or she acted in a way that would amount to a gross deviation from the standard of conduct that a reasonable person in his or her situation would have followed.
3. If, after considering all the evidence, you find that the Commonwealth has established beyond a reasonable doubt that the defendant's reckless action placed [name of victim] in danger of death or serious injury, you should find the defendant guilty of recklessly endangering another person. Otherwise, you must find the defendant not guilty.

Pa. SSJI (Crim), §15.2705 (2016).

Both crimes require that the jury find that Defendant acted recklessly. Specifically, to be charged with aggravated assault and recklessly endangering another person, the jury must have found that Defendant's alleged racing and switching of lanes amounted to a conscious disregard for a substantial and unjustifiable risk that caused Ms. Briggs' injuries. The Commonwealth's main theory that Defendant was racing and recklessly changing lanes stemmed from the sole testimony of Mr. Kiehl. Defendant's own

13

EXHIBIT D

statements indicated that he was not speeding and that he changed lanes in order to avoid a collision with the Mercedes that was speeding up from behind. As such, particularly since Mr. Kiehl was the sole witness who claimed that the two vehicles were racing, character evidence of Defendant's good traits of being law-abiding, truthful, non-violent and not reckless would have helped the jury determine issues of credibility and whether to believe Defendant's version of the events.

In order to prevail on a claim of ineffectiveness for failing to call a witness, "a defendant must prove, in addition to meeting the three *Pierce* requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial." Commonwealth v. Walls, 993 A.2d 289, 302 (Pa. Super. Ct. 2010). During the PCRA Hearing, Defendant offered four witnesses who could have testified as to his reputation for being law-abiding, honest, and peaceful. The first witness called was Shooty Leonard, who has worked as a validation specialist for fourteen years. (Tr. of April 22, 2016, p. 3.) Ms. Leonard testified that she had known the Defendant from November 2008 to May 2012 while working together on a work project in Taiwan. Id. at pp. 4-5. She testified that she came to know the Defendant really well as they spent quite a lot of time together working, sometimes almost seven days a week. Id. at p. 6. She testified that Defendant had a reputation for being law-abiding, honest and peaceful amongst the group of people involved in the Taiwan project. Id. at pp. 7-8. Ms. Leonard also testified that Defendant was very hard-working and very responsible. Id. at p. 9. Lastly, Ms. Leonard indicated that she had

14

EXHIBIT D

never been contacted to testify as a character witness prior to January 2013 and that she would have been available and willing to testify in January 2013. Id. at pp. 9-10.

The next witness offered by Defendant was Michael Bradley who worked as a site lead for a company that acts as a contracting and consulting firm for the pharmaceutical industry. Id. at p. 12. Mr. Bradley was also involved in the same Taiwan project as Ms. Leonard and Defendant. Id. at p. 13. Mr. Bradley testified that he continued to work with Defendant at other client sites after the Taiwan project. Id. at p. 14. He testified that Defendant had a reputation for being honest, law-abiding and peaceful. Id. at pp. 16-17. He also testified that he was never contacted by an attorney to testify on Defendant's behalf in January 2013 and that he would have been available and willing had he been asked at the time. Id. at p. 18.

Defendant also called Hamilton Negron and Ediberto Acosta who are familiar with Defendant through friends and family members. Id. at pp. 22, 28. Mr. Hamilton testified that nobody in their circle of friends ever had any complaints about Defendant and that they have an opinion that Defendant is truthful, honest and peaceful. Id. at pp. 23-24. Mr. Acosta testified that he had known Defendant since 2005. Id. at p. 27. Mr. Acosta similarly testified that Defendant has a reputation for honesty and truthfulness, being law-abiding, and being nonviolent. Id. at pp. 28-29. He also described Defendant as a peaceful and happy person. Id. Lastly, both Mr. Negron and Mr. Acosta denied being contacted back in January 2013 to testify on Defendant's behalf. Id. at pp. 24-25, 29. Both Mr. Negron and Mr. Acosta testified that they were available and willing to testify on behalf of Defendant in January 2013. Id. at pp. 25, 30.

Defendant also testified at the PCRA hearing. As way of background, Defendant

15

EXHIBIT D

is a mechanical engineer who has lived in York, Pennsylvania since 2005. Id. at p. 34. Defendant had retained trial counsel around August 2011 when he was first charged. Id. at p. 35. Defendant testified that trial counsel never discussed calling character witnesses for his trial. Id. at pp. 43-44. Defendant also stated that he was never aware that he could call character witnesses for his trial. Id. To summarize, all four of the witnesses that Defendant has offered at the PCRA hearing stated that they would have been available and willing to testify on Defendant's behalf. In addition, trial counsel did not discuss the possibility of calling character witnesses but could have been aware of the existence of the four witnesses had he discussed the issue with Defendant.

Lastly, we must discuss whether the absence of such character witnesses was so prejudicial to Defendant as to deny him a fair trial. As mentioned previously, the Commonwealth's primary case theory was that Defendant was illegally racing another vehicle and erratically changing lanes. The idea that Defendant was racing and recklessly changing lanes was supported by the sole testimony of Mr. Kiehl in contradiction to Defendant's own testimony. In this case, when only two witnesses are involved, the credibility of witnesses becomes substantive evidence and can in and of itself raise issues of doubt for the jury. Here, Defendant's credibility as to whether he is honest and peaceful was crucial to the jury to determine whether they believed Defendant's or Mr. Kiehl's version of the events. The four witnesses that Defendant presented at the PCRA hearing all found Defendant to be an honest, law-abiding and peaceful person. Defendant also has no criminal record and is gainfully employed as an engineer, facts that could also cause the jury to doubt as to whether Defendant was dishonest. Given the importance of character evidence in this situation, we find that the

16

EXHIBIT D

absence of character evidence at trial rises to the level of prejudice that would deny the Defendant a fair trial.

Appellant's second claim also directly addresses the second prong of the *Pierce*-test. The Commonwealth argues that trial counsel had a reasonable basis for not calling character witnesses. We have already determined that calling character witnesses on behalf of Defendant had merit and so we next analyze whether counsel had a reasonable basis for not calling character witnesses. The "reasonable basis" test involves an inquiry into "whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." Weiss *supra* at 441-442.

Attorney Hoffman also testified during the PCRA Hearing. Attorney Hoffman indicated that the trial strategy he had developed with Defendant was that "this was a civil action. That this was essentially a traffic accident that did not rise to the level of a criminal event." (Tr. of April 22, 2016, p. 52.) When asked as to why he did not consider using character evidence in this case, Attorney Hoffman responded:

> ATTORNEY LOMBARDO: Did you consider using character evidence in this case?
>
> ATTORNEY HOFFMAN: No, I did not.
>
> ATTORNEY LOMBARDO: And can you tell the Court why you didn't think to use character evidence in this case?
>
> ATTORNEY HOFFMAN: The problem with character evidence ordinarily is that you are opening up doors that are best left closed. In this case, what we had was basically speeding that led to an accident with an intermediary factor. The problem with the character witness is that the

17

EXHIBIT D

absolute best thing a character witness can say is that they have never seen Julio speed or they have never seen Julio act in a manner that is reckless.

The problem is the Commonwealth then has this door opened up where they can say, Have you been in a car with him, have you seen him speeding before, have you seen him driving in a manner that is not appropriate, have you ever seen him change lanes without signaling, and once that happens, there is no good answer. Either the witness says, no, I have never seen him do any of those things, in which case the jury is not going to believe the witnesses because everyone has done those things at least once in their lives, or the witness says, yeah, I have seen him speed before, and then you just giving the Commonwealth a silver bullet. So instead of opening up doors, I wanted to keep those avenues closed.

ATTORNEY LOMBARDO: And, Attorney Hoffman, just quickly, were you aware of any traffic violations that Mr. Ocasio had?

ATTORNEY HOFFMAN: I don't believe he had any. At the time – at the time we went to trial in January, I don't think he had any.

\*\*\*

ATTORNEY LOMBARDO: Did Mr. Ocasio ever give you any names of any witnesses he wanted to call?

ATTORNEY HOFFMAN: No. In his defense, I never asked.

Id. at pp. 55-57.

Attorney Hoffman admitted that he never asked Defendant about possible witnesses that could testify on his behalf at trial. Counsel's rationale for not calling character witnesses was solely based on the fact that those witnesses might be cross-examined by the Commonwealth about Defendant's driving habits. We do not find that this constitutes a reasonable basis done so with the client's interests in mind. First, Attorney Hoffman would have had the opportunity to investigate the witnesses and determine whether they even had knowledge about Defendant's reputation for driving vehicles. Second, at the time of the first trial, Defendant had a squeaky-clean driving record with

18

EXHIBIT D

not even a traffic citation so even if the Commonwealth further "opened the door" into Defendant's driving record, he did not have such a record that would have been damaging at trial. Lastly, the four witnesses that Defendant presented at the PCRA hearing all testified that Defendant had a reputation for honesty as well as for being law-abiding and peaceful. These four witnesses could have elaborated on Defendant's reputation for honesty and not just his reputation for driving vehicles.

Appellant's last claim is that the decision to not include character witnesses did not prejudice Defendant as Defendant admitted to violating the law and driving in a reckless manner. This last claim also directly touches upon the last prong of the *Pierce*-test. The last prong of the *Pierce*-test requires that we determine whether Defendant was prejudiced by counsel's deficient representation. In order to successfully show that he was prejudiced, Defendant "must demonstrate that the alternative not selected by counsel offered a substantially greater chance of success than the tactic chosen. Commonwealth v. Saxton, 532 A.2d 352 (Pa. 1987). To make a determination of prejudice, "we must focus on counsel's overall trial strategy and view his performance as a whole." Id. at 355.

As discussed earlier, trial counsel's strategy at trial was that the accident did not rise to the level of a criminal manner and was instead a civil action. While we do not find the trial strategy itself to be without merit, we find that counsel could have further carried out this trial strategy by calling character witnesses on behalf of Defendant. Even if we presume that trial counsel delivered an adequate performance at trial, given Defendant's immaculate criminal record and driving record as well as his reputation both professionally and amongst friends, presenting such character witnesses would

19

EXHIBIT D

have not only vouched for Defendant's good character, but would have given the jury a reasonable doubt regarding Defendant's guilt. Thus, the failure to call such character witnesses undermined Defendant's chance to place reasonable doubt in the minds of the jury and we find that this greatly prejudiced Defendant's chance to succeed at trial.

Lastly, the Commonwealth also argues that Defendant admitted to violating the law and driving in a reckless manner. The Commonwealth cites to testimony from pages 81 and 85-86 of the PCRA Hearing as well as the Superior Court's unpublished memorandum opinion dated April 21, 2015 regarding Defendant' direct appeal of the verdict. Regarding Defendant's speeding on the day of the accident, Defendant's statement to Officer Wilson and Sergeant Wilbur was that he was not speeding and that he changed lanes in order to avoid the oncoming Mercedes vehicle that was quickly approaching from behind. During the PCRA Hearing, it was counsel's decision to concede the issue that Defendant was speeding and Attorney Hoffman clarified this fact:

> ATTORNEY LOMBARDO: Mr. Hoffman, let's go back to your character evidence or start there I should say. As part of your trial strategy, were you conceding that Mr. Ocasio was speeding that day?
>
> ATTORNEY HOFFMAN: Essentially. The nice thing about all the witness testimony is that it was focused more on Mr. Miller. In regards to Mr. Ocasio's speed, they actually never really verified it...
>
> ***
>
> ATTORNEY BRAUGHT: You also just testified that you were essentially conceding at trial that Mr. Ocasio was speeding?
>
> ATTORNEY HOFFMAN: More or less. I mean the witnesses had seen that. So we were trying to again fly under the radar in that respect. This entire trial was about whether or not his decision to change lanes was somehow the reason for this accident.

20

EXHIBIT D

ATTORNEY BRAUGHT: You are aware that Mr. Ocasio when he gave a statement to Sergeant Wilbur said that he was going 40 miles an hour?

ATTORNEY HOFFMAN: That's correct.

ATTORNEY BRAUGHT: And that would not have been speeding?

ATTORNEY HOFFMAN: No, it would not have been speeding.

(Tr. of April 22, 2016, p. 81, 85-86.)

We find that conceding the issue of Defendant's speeding was a lapse of judgment on the part of trial counsel as Defendant has clearly disputed that fact in his statements to officers. We also find that Defendant did not actually admit that he was driving recklessly during the trial and that both Officer Wilson and Sergeant Wilbur testified that Defendant contended that he was going around forty miles an hour and changing lanes in order to avoid a collision rather than doing so in a reckless manner.

Furthermore, as mentioned previously, Sergeant Wilbur clarified that Defendant never stated that he was racing the Mercedes, rather, Defendant simply answered Sergeant Wilbur's questions on racing. The Superior Court's unpublished memorandum on page pages 8-9 also mentions that Defendant describes Co-Defendant Miller's Mercedes as "the car that was previously racing against me." Defendant later clarified that he did not mean that statement to imply that he was racing rather that the Mercedes was racing. Again, this is precisely why character evidence would have been so valuable at trial. The crux of the Commonwealth's case rests upon whether Defendant was indeed racing. As Attorney Hoffman admitted, Defendant's speed was never actually determined at trial. Surely, the fact that Defendant had a reputation for being honest, peaceful and law-abiding would have raised doubt in the minds of the jury as to whether he was really racing and as to whether his testimony

21

EXHIBIT D

was credible. We once again find that the lack of character witnesses at trial greatly prejudiced Defendant's chances to raise doubts in the minds of the jury as to his guilt.

For the reasons stated, we find that Defendant has satisfied all three prongs of the *Pierce*-test and met the burden of proving that trial counsel was ineffective. As such, he is entitled to relief under the Post Conviction Relief Act and a new trial is granted.

## CONCLUSION

This Court has thoroughly reviewed all of the relevant pleadings and transcripts in this matter. We rely on and incorporate those pleadings and transcripts, including the within Opinion as its 1925(a) Opinion in the above-captioned matter.

BY THE COURT,

John S. Kennedy, Judge

Date: October 24, 2017

DON O'SHELL
CLERK OF COURTS
2017 OCT 24 PM 1:23
RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER

22

EXHIBIT D